# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br>**v.**<br><br>**ELON MUSK,**<br><br>**Defendant.** | **Civil Action No. 1:18-cv-08865-LJL** |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Elon Musk, Defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from the Court's Opinion and Order entered on April 27, 2022 denying relief from judgment under Fed. R. Civ. P. 60(b).

Dated:  June 15, 2022

Respectfully submitted,

/s/ Alex Spiro
Alex Spiro
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com

*Attorney for Elon Musk*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Notice to be filed with the Court's CM/ECF system this 15th day of June, 2022, thereby causing it to be served on all counsel of record.

Dated: New York, New York
      June 15, 2022

Respectfully submitted,

/s/ Alex Spiro           
Alex Spiro
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com

*Attorney for Elon Musk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
UNITED STATES SECURITIES AND                                      :
EXCHANGE COMMISSION,                                              :
                                                                  :
                                        Plaintiff,                :          18-cv-8865 (LJL)
                                                                  :
                       -v-                                        :          OPINION AND ORDER
                                                                  :
ELON MUSK,                                                        :
                                                                  :
                                        Defendant.                :
                                                                  :
------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: _04/27/2022_

LEWIS J. LIMAN, United States District Judge:

    Defendant Elon Musk ("Musk") moves for an order quashing certain portions of an

administrative subpoena issued by Plaintiff, the United States Securities and Exchange

Commission ("SEC") and terminating the consent decree he previously entered into with the

SEC.  Dkt. No. 70.

    For the following reasons, the motion is denied.

## BACKGROUND

### I.    The SEC Action and the Consent Decree

    Defendant Musk is a party to a final judgment entered by the Court on October 16, 2018,

Dkt. No. 14, after the SEC charged him in a complaint filed on September 27, 2018 with

violating Section 10(b)(5) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15

U.S.C. § 78u, and Rule 10b-5 promulgated thereunder, Dkt. No. 1.  The complaint alleged that

Musk published a series of false and misleading statements to millions of people, including

members of the press, using the social media platform Twitter.  In particular, the SEC alleged

that in August 2018, Musk tweeted to his then over twenty-two million Twitter followers that he

could take Tesla, Inc. ("Tesla") private at $420 per share (a substantial premium to its trading price at the time), that funding for the transaction had been secured, and that the only remaining uncertainty was a shareholder vote. The tweet allegedly was false: Musk had not discussed specific deal terms with any potential financing partners, and he knew the potential transaction was uncertain and subject to numerous contingencies. His tweets caused Tesla's stock price to jump by over six percent on August 7, 2018 and led to significant market disruption.

The judgment, which was filed with Musk's consent, permanently enjoined him from violating Section 10(b) of the Exchange Act and Rule 10b-5 and ordered him to pay a civil penalty of $20 million. Dkt. No. 14 (the "Musk Consent") ¶¶ 2(a)–(b). It also ordered him to comply with a series of undertakings. *Id.* ¶ 2(c). In particular, Musk agreed to resign from his role as Chairman of the Board of Directors of Tesla and not to seek or accept an appointment as Chairman for a period of three years thereafter, *id.* ¶ 5(a); to comply with all mandatory procedures implemented by Tesla regarding (i) the oversight of communications relating to Tesla made in any format including posts on social media (*e.g.*, Twitter) and on Tesla's website; and (ii) the pre-approval of any such written communications that contain, or reasonably could contain, information material to Tesla or its shareholders, *id.* ¶ 5(b); and to certify in writing his compliance with the first undertaking set forth above, *id.* ¶ 5(c).[1] The judgment recited that Musk "enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the [SEC] or any member, officer, employee, agent, or representative of [the SEC] to induce [Musk] to enter into this Consent." *Id.* ¶ 8. The Musk Consent reflected the mutual understanding that it "resolve[d] only the claims asserted against

---

[1] The judgment also permits the SEC to "make reasonable requests for further evidence" that Musk has complied with his obligations and requires Musk to provide such evidence. *Id.* ¶ 5(c).

[Musk] in th[e] civil proceeding." *Id.* ¶ 12. Further, as part of the settlement, Musk agreed not to "take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis" as well as not to "make or permit to be made any public statement to the effect that [Musk] d[id] not admit the allegations of the complaint, or that th[e] Consent contains no admission of the allegations, without also stating that [Musk] d[id] not deny the allegations." *Id.* ¶ 13. In the common vernacular, Musk agreed not to deny the allegations of the complaint.

At the same time, Tesla agreed to a consent judgment against it (the "Tesla Consent"). *Securities and Exchange Commission v. Tesla, Inc.*, 18-cv-08947-LJL (S.D.N.Y.), ECF No. 14. The Tesla Consent contained the requirement that Tesla implement mandatory procedures to oversee and pre-approve Musk's Tesla-related written communications made in any format including but not limited to Twitter posts that reasonably could contain information material to the company or its shareholders. *Id.* ¶ 6(d). The judgment further required that Tesla set forth in its disclosure policies and procedures "the definition of, and the process to determine, which of [Musk's] communications contained or reasonably could contain, information material to [Tesla] or its shareholders." *Id.*

In February 2019, within months of the entry of the consent judgments and on the SEC's application, the Court issued an order requiring Musk to show cause why he should not be held in contempt of the Court's judgment, Dkt. No. 19, after Musk tweeted: "Tesla made 0 cars in 2011, but will make around 500k in 2019," without seeking or receiving pre-approval, Dkt. No. 18 at 5. The tweet had to be corrected by a second, pre-approved tweet several hours later: "Meant to say annualized production rate at end of 2019 probably around 500k, ie 10k cars/week. Deliveries for year estimated to be about 400k." *Id.* The SEC alleged that the first

statement was inaccurate and that it was disseminated to over twenty-four million people.  *Id.* at 1.  Approval of the tweet was required by Tesla's Senior Executives Communications Policy (Dec. 11, 2018), which defined the written communications requiring approval to include "projections, forecasts, or estimates regarding Tesla's business."[2]  Dkt. No. 18-1 at 1.  The Court ordered the parties to meet and confer in an effort to resolve the pending motion and to agree upon modifications to the consent judgment and Tesla's Senior Executives Communications Policy, Dkt. No. 39; the parties then submitted a consent motion to modify the final judgment to require Musk to obtain pre-approval by an experienced securities lawyer employed by the Company of any one of a series of types of written communications, including "events regarding the Company's securities (including Musk's acquisition or disposition of the Company's securities)" and "any event requiring the filing of a Form 8-K by the Company with the Securities and Exchange Commission."  Dkt. No. 46.

## II.    The Instant Dispute

On November 6, 2021, Musk tweeted several times concerning his potential sale of a large portion of his holdings in Tesla without obtaining pre-approval for the tweets.  The first tweet, at 12:17 pm PT, asked:  "Much is made lately of unrealized gains being a measure of tax avoidance, so I propose selling 10% of my Tesla stock.  Do you support this?"  Dkt. No. 71 at 3.  Six minutes later, at 12:23 pm PT, he tweeted:  "I will abide by the results of this poll, whichever way it goes."  *Id.*  Ultimately, over seven million votes were cast—57.9% of the votes, or

---

[2] Musk took the position that his tweet was immaterial and was merely "celebratory"—"a statement of pride and optimism."  Dkt. No. 27 at 11.  The position bordered on the risible.  A reasonable observer could certainly conclude that when the CEO of a Fortune 100 company tells millions of followers that his company "will make" a specific production volume in the next year, the statement is not a casual one.

3,519,252 in total, answered yes. *Id.* The record does not reflect whether Musk abided by his public commitment.

The SEC served subpoenas on Musk and Tesla seeking, among other things, information about the tweets and the process that was employed before they were disseminated to the public. Specifically, on November 16, 2021, the SEC served a subpoena on Tesla requiring it to produce ten categories of documents, including all documents and communications concerning the two tweets as well as documents sufficient to determine whether the two tweets were submitted to Tesla's General Counsel or Securities Counsel for pre-approval or review before they were published. Dkt. No. 69-2. On November 21, 2021, the SEC served a subpoena on Musk requiring him to produce five categories of documents, including all documents and communications concerning the two tweets as well as documents related in any way to the submission of the tweets to Tesla's General Counsel or Securities Counsel for pre-approval or review before they were published. Dkt. No. 69-1. Both were served pursuant to a SEC Formal Order of Investigation (the "Formal Order") dated November 16, 2021, which stated that the SEC had information that tended to show violations of the federal securities laws. In particular, the Formal Order, entitled "*In the Matter of Tesla, Inc.* (SF-4496)," and labeled with a non-public SEC filing number, recited that the SEC had information that tended to show that from at least November 5, 2021, Tesla and its officers engaged in conducted that violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and Rule 13a-15 of the Exchange Act. Dkt. No. 69-3. It therefore ordered and authorized its staff to conduct a private investigation to determine whether any persons or entities had violated those provisions of the federal securities laws and to subpoena

witnesses and compel the production of "books, papers, correspondence, memoranda, or other evidence deemed relevant or material to the inquiry."  *Id.*

On March 8, 2022, Musk filed this motion to quash certain portions of the SEC subpoena and to terminate the consent decree.  Dkt. No. 70.  The SEC filed a memorandum in opposition on March 22, 2020, Dkt. No. 78, and Musk filed a reply memorandum in further support of his motion on March 29, 2022, Dkt. No. 80.[3]

## DISCUSSION

Musk moves for two forms of relief: (1) an order quashing the subpoena served upon him, and (2) an order terminating the consent decree.  The Court discusses each in turn.

## I.      Motion to Quash the Administrative Subpoenas

Musk moves to quash portions of the subpoena served upon him, arguing that the SEC lacks legal authority to issue those demands under the purview of either the securities laws or the judgments in this case and arguing that the subpoena was issued in bad faith.  Dkt. No. 70.  This proceeding, however, is not the proper forum for such a motion.

The SEC enjoys broad power under Section 21(b) of the Exchange Act, 15 U.S.C. § 78u, to "make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate" any provision of the federal securities laws, and to "require the production of any books, papers, correspondence, memoranda, or other records

---

[3] Musk's motion followed a series of letters filed by Musk and the SEC, beginning with a February 17, 2022 letter filed by Musk in which his counsel state that they "write to alert the Court to a pattern of conduct by the [SEC] that has gone beyond the pale," including "devoting its formidable resources to endless, unfounded investigations into Mr. Musk and Tesla," and argue that Musk and Tesla "never agreed to a settlement that allows the SEC to issue subpoenas absent oversight and approval from this Court."  Dkt. No. 61.  The Court issued an Order responding that "to the extent that the Defendants have a non-frivolous basis to quash a subpoena in light of the Court's prior orders in this case, the Defendants may make a motion, supported by briefing, that requests specific relief from the Court," Dkt. No. 65.  Tesla apparently is cooperating with the subpoena issued to it.  *See* Dkt. No. 78 at 5.

which the Commission deems relevant or material to the inquiry." Under Section 78u(c), if someone refuses to obey a subpoena issued by the SEC, it "may invoke" judicial aid "in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records." A parallel provision exists under Section 19 of the Securities Act of 1933. *See* 15 U.S.C. § 77s.

The review authorized by Section 78u(c) is limited precisely to preserve the SEC's investigative prerogatives and to ensure that it can accomplish its investigative goals on a timely basis. First, the process can be initiated only by the SEC and only in the case of "contumacy by, or refusal to obey a subpoena issued to," a person. 15 U.S.C. § 78u(c). If the SEC chooses not to enforce a subpoena, the recipient of the subpoena cannot demand what is, in effect, an advisory opinion. Second, "[c]ommission enforcement proceedings may be summary in nature." *Securities and Exchange Commission v. Knopfler*, 658 F.2d 25, 26 (2d Cir. 1981). The court need not grant the opponent of a subpoena an evidentiary hearing and he or she "has a heavy burden if he [or she] seeks denial of enforcement on the ground that the subpoena is sought for an invalid purpose." *Id.* The opponent of the subpoena "must prove that the improper purpose is that of the Commission, not merely that of one of its investigators, and the burden may not be met by the presentation of conclusory allegations. An evidentiary hearing is not required in the absence of a meaningful and substantial factual showing." *Id.* Section 78u(c) grants the SEC wide-ranging investigative discretion. 15 U.S.C. § 78u(a). It endows the SEC with "broad powers to conduct investigations in support of its statutory mandate to protect the public interest through prompt and effective enforcement of the federal securities laws." *Treats Int'l Enters., Inc. v. Securities and Exchange Commission*, 828 F. Supp. 16, 18 (S.D.N.Y. 1993) (internal quotation marks omitted) (quoting H. Rep. No. 1321, 96th Cong., 2d Sess. 4 (1980), *reprinted in*

1980 U.S.C.C.A.N. 3874, 3878).  The Section 78u(c) summary proceeding is designed to allow

some judicial review without "contraven[ing] . . . Congress's decision to confide the

investigative determination to the SEC."  *Id.*; *cf. Securities and Exchange Commission v. Jerry T.*

*O'Brien, Inc.*, 467 U.S. 735, 750–51 (1984) (declining to impose a notice requirement on the

SEC for investigations because such a requirement "'would cast doubt upon and stultify the

Commission's every investigatory move,'" and because imposing such a requirement would

mean that, if someone objected to such notification, "a district court would be obliged to conduct

some kind of hearing to determine the scope and thrust of the ongoing investigation," which

"would drain the resources of the judiciary as well as the Commission" (quoting *Donaldson v.*

*United States*, 400 U.S. 517, 531 (1971))).  As *Knopfler* makes clear, except in very limited

circumstances, the SEC, when it is conducting an investigation, is not subject to the time-

consuming procedures of discovery and a hearing incident to ordinary litigation.

  The Second Circuit has squarely held "that Section 78u(c) is the exclusive method by

which the validity of SEC investigations and subpoenas may be tested in the federal courts."

*Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir. 1983).  "The exclusive method for testing the

validity of the SEC's investigatory motives or methods is a contested subpoena enforcement

proceeding under 15 U.S.C. § 78u(c)."  *Sprecher v. Von Stein*, 772 F.2d 16, 18 (2d Cir. 1985).  In

other words, the only mechanism for a party to challenge a subpoena issued to him by the SEC is

a proceeding brought by the SEC under Section 78u(c) to enforce that subpoena.  The SEC has

not commenced any such proceeding to date to compel Musk's compliance with the subpoena.

Dkt. No. 78 at 5.  While "[p]arties who are the subject of such subpoenas are free in a proceeding

under [Section 78u(c)] to raise claims of abuse of process," they are barred by the doctrine of

sovereign immunity from bringing their own actions against the SEC.  *Graber*, 716 F.2d at 974.

That principle has been applied time and again in this Circuit as well as elsewhere in response to efforts to circumvent the summary procedures authorized under the federal securities laws. *See, e.g.*, *Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014) (holding that Section 702 did not waive sovereign immunity in collateral suit for injunctive relief against SEC, reasoning that "[b]ecause . . . the subpoena enforcement proceeding provides an opportunity for judicial review of both an investigation's legitimacy, and a subpoena's legitimacy, the proceeding [pursuant to Section 78u(c)] 'is the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts'" (quoting *Graber*, 716 F.2d at 975)); *Finazzo v. SEC*, 2008 WL 3521351, at *3 (S.D.N.Y. Aug. 8, 2008) (Sullivan, J.) (same); *Treats*, 828 F. Supp. at 19 (denying plaintiff's motion for a preliminary injunction and granting SEC's motion to dismiss for lack of subject matter jurisdiction, concluding that the "complaint seeking to enjoin the SEC's investigation is beyond the limited scope of review available in this court"); *see also, e.g.*, *Gentile v. Securities and Exchange Commission*, 2019 WL 2098832 (D.N.J. May 14, 2019); *Cook v. SEC*, 664 F. Supp. 2d 997, 999 (D. Minn. 2009) (denying motion to stay SEC investigation for lack of subject matter jurisdiction, explaining that "[a] subpoena enforcement action is the exclusive method by which the validity of [an SEC] investigation may be challenged").

In *Graber*, as here, the defendant, Sprecher, had been a party to a prior action where he was sued by the SEC for securities fraud; that action that was settled pursuant to a written stipulation in which he agreed not to engage in certain securities transactions for specific periods of time. *Graber*, 716 F.2d at 970. Just one year later, the SEC entered a Formal Order of Investigation authorizing the issuance of subpoenas, pursuant to which a subpoena was issued to him. Sprecher initiated a separate proceeding against the SEC, arguing, much like Musk does

here, that the investigation "was improperly motivated by . . . bias"—in his case by religious bias and in Musk's case allegedly by political bias—"and a desire to harass him, that the subpoena violated [the agreement he reached in connection with the earlier SEC action], and that it sought to compel him to divulge materials protected by the attorney-client privilege." *Id.* Judge Winter made short shrift of those arguments. Sprecher's "complaint allege[d] actions which are either committed to the SEC's discretion or are subject to a statutory provision [Section 78u(c)] which provides the exclusive relief available." *Id.* at 974. While it is true "that the procedures and scope of judicial security under Section 78u(c) differ considerably from those which would be available" in an alternative judicial proceeding, *Graber*, 716 F.2d at 975, the nature of a Section 78u(c) proceeding is summary by design, *see id.* (stating that the differences in the scope of judicial scrutiny is "of little moment" because Congress in passing Section 78u(c) intended subpoena enforcement to be "the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts").

Musk seeks to avoid the impact of *Graber* and the long line of cases applying the same principle on the theory that, because he is a party to a SEC consent judgment that restricts him from violating various provisions of the federal securities laws and because the subpoena refers to the judgments in this case, the SEC is limited as a matter of law to following the procedures for enforcement of the judgment in this case, including obtaining permission of the Court for discovery in connection with a contempt proceeding. He argues that the *Graber* line of cases is distinguishable because the SEC, having initiated this lawsuit, has waived any argument based on sovereign immunity.

But *Graber* is not so easily distinguished. It may be that in *Graber* and the cases that followed it, a subpoena recipient sought to avoid the summary procedures under Section 78u(c)

by the expedient of filing a new lawsuit, whereas here Musk seeks to limit the SEC's authority

by making a motion in a lawsuit that the SEC has already filed, but that is a distinction without a

difference. *Graber* did not turn alone or even primarily on the extent of the waiver of sovereign

immunity granted under Section 702 of the Administrative Procedure Act ("APA")—which

provides for a limited waiver of sovereign immunity—but instead on the Circuit's conclusion

that Section 78u(c) of the Exchange Act, and the parallel provision under the Securities Act,

expressed a "limitation on judicial review" and that therefore, as a result of the proviso to

Section 702 stating that the waiver of immunity does not affect other limitations on judicial

review, that restriction remained intact. *Graber*, 716 F.2d at 974. In other words, the Circuit

concluded that Congress intended in Section 78u(c) itself, as it preexisted and survived the APA,

to channel all challenges to SEC investigations and subpoenas to subpoena enforcement

proceedings under that Section and not to allow any alternative channels for judicial review. The

Circuit, honoring congressional intent, concluded without reservation that Section 78u(c) is the

only mechanism to bring motions like this.

      Moreover, the mere fact that SEC brought an action against Musk and a related action

against Tesla for Musk's tweets in August 2018 does not waive the SEC's sovereign immunity

with respect to an investigation the SEC launched in late 2021 regarding conduct that occurred in

late 2021, after the 2018 case was settled. Courts repeatedly have held that the filing of a lawsuit

by the federal government or one of its agencies does not waive sovereign immunity with respect

to counterclaims that the defendant might assert against the government or one of those agencies.

There must be an independent basis to infer the waiver of sovereign immunity. *See, e.g.*, *United*

*States v. All Right, Title & Interest*, 82 F. Supp. 893, 899 (S.D.N.Y. 1993) ("It is well established

that the United States Government has sovereign immunity and, consequently, can be sued only

to the extent it consents to be sued, and only in the manner established by law.  Thus, counterclaims against the United States can be maintained only where the Government has consented or waived its immunity from suit on that claim."); *United States v. $10,000.00 in U.S. Funds*, 863 F. Supp. 812, 816 (S.D. Ill. 1994) ("[T]he mere fact that the government is the plaintiff and has brought the forfeiture action does not constitute a waiver of sovereign immunity and authorize the bringing of a counterclaim."); *United States v. Krieger*, 773 F. Supp. 580, 589 (S.D.N.Y. 1991) ("[A]ny counterclaim in an action brought by the United States must show the authority by which the claim against the United States may be maintained in order for the court to be able to exercise its jurisdiction.").

It follows necessarily that the fact that the SEC previously brought an action against Musk (that was settled in a judgment filed with the court) also does not effect a waiver as to the sovereign immunity conferred by Section 78u(c) or give him an alternative means to challenge a SEC administrative subpoena issued pursuant to a formal Order of Investigation.  The judgment against Musk expressly stated that it was to settle "only the claims asserted against [Musk] in th[e] civil proceeding."  Musk Consent ¶ 12.  It did not give Musk any broader immunity from other SEC investigations or proceedings—including related ones.  It thus preserved the SEC's authority to investigate Musk for additional securities violations or to ask for documents and records from him in connection with an investigation of others should the SEC receive information that suggested he or others violated the securities laws again.  Musk may wish it were otherwise, but he remains subject to the same enforcement authority—and has the same means to challenge the exercise of that authority—as any other citizen.  Indeed, to conclude otherwise would be to hold that a serial violator of the securities laws or a recidivist would enjoy greater protection against SEC enforcement than a person who had never even been accused of a

securities law violation.  Musk points to nothing in the law or the language of the statute that would suggest that Congress intended such a perverse result.

The additional fact that the SEC subpoena calls for documents regarding Musk's adherence to the judgment and, in particular, information regarding whether his communication was pre-approved by counsel, does not entitle him to the independent judicial review in this proceeding that would be denied to any other person who had not been a defendant in a prior SEC enforcement action or the subject of a consent decree with the SEC.  The administrative subpoena was issued pursuant to authority granted the SEC under a Formal Order of Investigation.  The Formal Order recites that the SEC has information tending to show a violation of the securities laws and authorizes the SEC to investigate potential violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Rule 13a-15 under the Exchange Act, not possible violations of the Musk Consent or the Tesla Consent.

That the consent decree permits the SEC to make "reasonable requests" of Musk to investigate his compliance, that Musk is required to comply with those, and that the production of such evidence might support a finding of contempt in this Court does not limit the SEC's power to independently investigate whether Musk's activity in 2021 violated securities laws—even if the same activity could constitute a violation of the consent decree—nor does it undermine the validity or lawfulness of its current investigation.  *See, e.g.*, *Grenda v. SEC*, 2017 WL 4053821, at *3 (W.D.N.Y. Sept. 14, 2017) (holding that the SEC's investigation of a potential violation of a prior settlement was "a legitimate inquiry, plain and simple").  It is not uncommon, for example, that the SEC will issue so-called "obey the law" injunctions.  *See U.S. S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2013 WL 1385013, at *11 n.12 (S.D.N.Y. Mar. 11, 2013)

13

(citing David M. Weiss, Reexamining the SEC's Use of Obey-the-Law Injunctions, 7 U.C. Davis Bus. L.J. 6 (2006)). It also might issue more tailored injunctions. But the provisions in the consent decree for the SEC to investigate noncompliance with that decree and to seek a contempt order against Musk if there is such a violation are provided as enforcement mechanisms for the consent decree itself, not for the securities laws writ large. They do not replace or derogate from the power that the SEC has with respect to every person—whether or not that person was the subject of any previous SEC action—to investigate whether that person has violated the laws intended to protect investors and—if the facts support that the person has violated the law—the right to bring an action against them. Were it otherwise, the SEC could never settle with a wrongdoer nor could the courts ever safely issue an injunction even in a case that did not reach a settlement. The incorrigible securities violator could readily buy a form of protection from future investigation. By agreeing to settle at the earliest hint of a first violation and perhaps on the cheap, he would limit the SEC's ability independently to use its investigative tools to investigate any future wrongdoing.[4]

The Court has concluded that Section 78u(c) prevents it from reviewing whether the subpoena was properly issued pursuant to that Formal Order. But even if it were within this Court's province to address the issue, the Court would not find that the information sought is irrelevant to the SEC investigation. Documents that would address whether Musk followed

---

[4] Musk argues that "[b]y specifically referring to the judgments in this case in its subpoena to Tesla and seeking documents from Mr. Musk pertaining to review or pre-approval of his tweets, the SEC seeks to circumvent the jurisdiction of this Court as it unilaterally grasps for documents pertaining specially to the consent decree." Dkt. No. 71 at 14. But if the SEC engages in misconduct in its investigation and if that misconduct prejudices Musk's litigation rights, Musk can bring that challenge to the use of the evidence in a contempt proceeding—if the SEC brings one. The argument does not establish Musk's entitlement to any greater protection with respect to a new SEC action than that enjoyed by any other person whose conduct is being investigated by the SEC.

corporate policies with respect to the pre-approval of his tweet and received advice of counsel bear directly on his culpability. If he disseminated the tweets only after following Tesla's corporate policies, including those demanded by the consent decree, he might have powerful defenses at least at to some of the potential violations the SEC is investigating. If, on the other hand, he willfully bypassed those procedures, that evidence too would suggest a far greater level of culpability. The SEC plainly is entitled to probe the issue. As to Tesla, whether it followed its own internal practices in the case of these tweets and otherwise bears on whether its representation in its SEC filings to investors that it had policies and procedures that were addressed to all senior executives was truthful or whether, instead, that representation had a material and significant omission.

## II.      Motion to Terminate the Consent Decree

Musk also asks the Court to terminate the consent decree pursuant to Federal Rule of Civil Procedure 60(b)(5). That rule permits a court to relieve a party from a final judgment if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). It does not permit a court to relieve a party of the burden of a consent decree on the theory that "it is no longer convenient to live with the terms of a consent decree." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). "Accordingly, a party seeking modification of a consent decree bears the burden of establishing that a *significant* change in circumstances warrants revision of the decree." *Id.* at 383. This "initial burden" may be met by showing "a significant change either in factual conditions or in law." *Id.* at 384. For example, "[m]odification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous" or "when a decree proves to be unworkable because of unforeseen obstacles." *Id.* In addition, a consent decree must be modified if "as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law" and

modification also "may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Id.* at 388. "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383; *see also id.* at 391. "A motion for relief from judgment is generally not favored," and "[t]he burden of proof is on the party seeking relief from judgment." *United States v. International Brotherhood of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) ("The party seeking relief bears the burden of establishing that changed circumstances warrant relief."). Particularly in a context involving a judgment against a private party, the Second Circuit has emphasized that the standard applied by courts should "promot[e] adherence to settlement agreements voluntarily entered into by parties to a litigation and ensur[e] that consent decrees are not so easily modifiable as to discourage parties from reaching constructive settlements." *United States v. Eastman Kodak Co.*, 63 F.3d 95, 102 (2d Cir. 1995).

Thus, the party seeking relief must establish "'either a significant change in factual conditions or in law,'" including changes such as "'(1) changed factual conditions [which] make compliance with the decree substantially more onerous;' (2) 'a decree [which] proves to be unworkable because of unforeseen obstacles;' or (3) [a circumstance in which] 'enforcement of the decree without modification would be detrimental to the public interest.'" *Calderon v. Wambua*, 2012 WL 1075840, at *3 (S.D.N.Y. Mar. 28, 2012) (quoting *Rufo*, 502 U.S. at 383–84).

Musk argues that the consent decree in this case should be terminated because (1) it "intrudes on Mr. Musk's First Amendment right to be free of prior restraints," Dkt. No. 71 at 20; (2) "has been misused to launch endless, boundless investigation of his speech," *id.*; and (3) was

extracted from Musk through the exercise of economic duress, *id.* at 24.  None of the arguments hold water.

With regard to the First Amendment argument, it is undisputed in this case that Musk's tweets are at least presumptively "protected speech." *Id.* at 21; *see also* Dkt. No. 78 at 13–14. At the same time, however, even Musk concedes that his free speech rights do not permit him to engage in speech that is or could "be considered fraudulent or otherwise violative of the securities laws." Dkt. No. 71 at 22–23.  The consent decree thus does not impose obligations that have "become impermissible under federal law." *Rufo*, 502 U.S. at 384.

Moreover, to the extent that the consent decree imposes an additional restriction on Musk's speech by requiring him to obtain pre-approval of his communications about Tesla,[5] "parties can waive their First Amendment rights in consent decrees and other settlements of judicial proceedings." *SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021).  In *Romeril*, the SEC brought a civil enforcement action against Romeril; the case ended in a settlement. *Id.* at 169. As part of that settlement, Romeril entered into a consent agreement with the SEC where he agreed "not to take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." *Id.* at 170 (internal quotation marks omitted) (quoting J. App'x at 70).  Years later, Romeril moved for relief from the judgment; he argued that "the judgment was void because the provision barring public denials of the allegations against him – in his words a 'gag order' – constituted a prior restraint that infringes his First Amendment rights

---

[5] The parties dispute whether this pre-approval requirement burdens Musk's First Amendment rights.  For the reasons that follow, the Court need not reach the question whether the requirement that Musk's statements that may be material to Tesla's stockholders go through some form of review before they are disseminated to the public, including the investing public, would pass muster under the First Amendment.

and violated his right to due process." *Id.* The Circuit denied his motion, stating that "[t]he Judgment does not violate the First Amendment because Romeril waived his right to publicly deny the allegations of the complaint." *Id.* at 172. The Court added:

> In the course of resolving legal proceedings, parties can, of course, waive their rights, including such basic rights as the right to trial and the right to confront witnesses. The First Amendment is no exception, and parties can waive their First Amendment rights in consent decrees and other settlements of judicial proceedings. To the extent that Romeril had the right to publicly deny the SEC's allegations against him, he waived that right by agreeing to the no-deny provision as part of a consent decree.

*Id.* at 172–73 (citations omitted).[6] *Romeril*'s reasoning is squarely applicable here. Musk, by entering into the consent decree in 2018, agreed to the provision requiring the pre-approval of any such written communications that contain, or reasonably could contain, information material to Tesla or its shareholders. He cannot now complain that this provision violates his First Amendment rights.

Musk's argument that the SEC has used the consent decree to harass him and to launch investigations of his speech is likewise meritless and, in this case, particularly ironic. The Supreme Court has instructed that "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Rufo*, 502 U.S. at 385. Musk could hardly have thought that at the time he entered the decree he would have been immune from non-public SEC investigations. The SEC has a historic mission to "achieve a high standard of business ethics in the securities industry," *Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963), and to protect investors, maintain fair, orderly, and efficient markets, and facilitate capital formation, *see* U.S. Securities and Exchange Commission, What We Do, *available at* https://www.sec.gov/about/what-we-do

---

[6] Musk argues that a petition for certiorari has been filed in *Romeril*, but it remains the law in this Circuit.

(last accessed Apr. 26, 2022); *see also* Statement of Robert J. Jackson, Jr., *Nominations of David J. Ryder, Hester M. Peirce, and Robert J. Jackson, Jr.: Hearing Before the S. Comm. On Banking, Housing and Urban Affairs*, 115th Cong. 74 (2017) ("[T]he SEC's three-part statutory mandate requires the agency to protect investors, maintain fair and efficient markets, and facilitate capital formation.").  That mission is essential to the protection of shareholders.  *See Capital Gains Research Bureau*, 375 U.S. at 186 ("The Investment Advisers Act of 1940 was the last in a series of Acts designed to eliminate certain abuses in the securities industry, abuses which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's. . . .  A fundamental purpose, common to these statutes [including the Securities Act of 1933 and the Securities Exchange Act of 1934] was to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry."); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 150–51 (1972) (citing *Capital Gains Research Bureau* for the same proposition).

Particularly against that backdrop, the SEC cannot be faulted for the limited requests it has issued.  Far from the "sheer number of demands" that Musk claims the SEC has made, *see* Dkt. No. 71 at 17–18, the SEC has in fact made only limited requests.  It has made only three sets of inquiries: inquiries related to the original enforcement actions that led to the consent decree here; inquiries related to the investigation that led to the amended final judgments; and the inquiries at issue in the investigation here, which arose after Musk tweeted about selling ten percent of his shares.  *See* Dkt. No. 78 at 10–11.  It is unsurprising that when Musk tweeted that he was thinking about selling ten percent of his interest in Tesla and that he planned to relinquish control over that decision to the majority opinion expressed by voters on his Twitter poll (or those who could muster control over the majority), the SEC would have some questions.

Finally, Musk's claim that he was the victim of economic duress is wholly unpersuasive. Musk argues that "[a]t the time [he] signed the consent in this case, Tesla was in no position to weather a fight with the SEC," because it "was a less mature company and the SEC's action stood to jeopardize the company's financing." Dkt. No. 71 at 24. But, even accepting as true that Musk—who was already a multibillionaire in 2018 and one of the wealthiest individuals in the world, *see* Deniz Çam & Jennifer Wang, *The Biggest Billionaire Winners and Losers of 2018*, Forbes (Dec. 21, 2018), https://www.forbes.com/sites/denizcam/2018/12/21/the-biggest-billionaire-winners-and-losers-of-2018/?sh=1e88d2d8526e, as well as the CEO of Tesla, which was already a Fortune 500 company, *see* Mike Sorrentino, *Tesla Leaps Up Fortune 500 and Apple Slips, But Walmart Beats Them All*, CNET (May 21, 2018), https://www.cnet.com/culture/tesla-leaps-up-fortune-500-and-apple-slips-but-walmart-beats-them-all/—was truly worried that engaging in a protracted litigation with the SEC would be financially ruinous for Tesla and felt that settling the lawsuit was the best thing for the company, that does not establish a basis for him to get out of the judgment he voluntarily signed.

It is a known fact that the commencement of a SEC lawsuit—just like any major litigation—can cause the distraction of management, lead to litigation costs, and ultimately be considered an undesirable event from the perspective of the subject company's shareholders and other stakeholders. That is perhaps a reason why no single SEC attorney can authorize a lawsuit; it requires Commission approval. *See* Office of Chief Counsel, Securities and Exchange Commission Division of Enforcement, *Enforcement Manual* §§ 2.5.1–.2 (Nov. 28, 2017), *available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf. The lawsuit is a consequence of our federal securities regulator having information that the defendant has violated the securities laws. But the fact that a settlement can avoid those costs, and the negative

reaction by shareholders, does not mean that it is coercive or unenforceable.  It may simply mean that the executive is acting in the best interests of those for whom he is a fiduciary.  Were it otherwise, the SEC could never accept a settlement and a defendant thus would never be able to get the advantages of settlement.  The agreement by a company or its senior executive would always be subject to the option by the executive or the company—when obligation no longer was convenient or when executive or the company believed that the SEC might be hobbled in its litigative capabilities—to simply claim that they felt "forced" to agree to a settlement because they "perceived that the company and its shareholders would be placed at undue risk unless [they] settled the matter promptly."  *See* Dkt. No. 72 ¶ 4.

The doctrine of economic duress is far more limited.  As Musk states, "[e]conomic duress is an equitable doctrine which 'comes into play upon the doing of a *wrongful act* which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'"  Dkt. No. 71 at 25 (alteration adopted and emphasis added) (quoting *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 1154, 1158 (1984)).[7] But Musk's argument that the SEC acted wrongfully amounts to one sentence:  "In 2018, the SEC took advantage of the position in which it put Mr. Musk."  *Id.* at 25.  That conclusory assertion is insufficient to sustain a finding of economic duress.  Musk was not forced to enter into the consent decree; rather, "for [his] own strategic purposes, [Musk], with the advice and assistance of counsel, entered into these agreements voluntarily, in order to secure the benefits thereof, including finality."  *Securities and Exchange Commission v. Conradt*, 309 F.R.D. 186, 187–88 (S.D.N.Y. 2015).  Musk cannot now seek to retract the agreement he knowingly and

---

[7] The parties assume that California law applies.  *See id.*; *see also* Dkt. No. 78 at 14.  The Court has no occasion to consider that issue.

willingly entered by simply bemoaning that he felt like he had to agree to it at the time but now—once the specter of the litigation is a distant memory and his company has become, in his estimation, all but invincible—wishes that he had not.

### CONCLUSION

The motion to quash the subpoena and to terminate the consent decree is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 70.


SO ORDERED.


Dated: April 27, 2022
      New York, New York
                                          LEWIS J. LIMAN
                               United States District Judge

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:18−cv−08865−LJL

United States Securities and Exchange Commission v. Musk
Assigned to: Judge Lewis J. Liman
Related Case: 1:18−cv−08947−LJL
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 09/27/2018
Date Terminated: 10/16/2018
Jury Demand: Plaintiff
Nature of Suit: 850
Securities/Commodities
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**United States Securities and Exchange
Commission**

represented by **Cheryl L. Crumpton**
Securities and Exchange Commission (DC)
100 F Street, N.E.
Washington, DC 20549
(202)−551−4459
Fax: 202−772−9245
Email: crumptonc@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adriene Mixon**
United States Securities and Exhange
Commission
444 South Flower Street
Ste 900
Los Angeles, CA 90071
202−551−4463
Email: mixona@sec.gov
*ATTORNEY TO BE NOTICED*

**Edward Barrett Atwood**
Securities and Exchange Commission (
San Francisco )
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
(415)−705−2467
Email: atwoode@sec.gov
*ATTORNEY TO BE NOTICED*

**Melissa Jane Armstrong**
Securities and Exchange Commission (DC)
100 F Street, N.E.
Washington, DC 20549
202−551−4724
Email: armstrongme@sec.gov
*ATTORNEY TO BE NOTICED*

**Steven D Buchholz**
U.S. Securities and Exchange Commission
44 Montgomery Street
Suite 2800
San Francisco, CA 94104
415−705−2500
Email: buchholzs@sec.gov
*ATTORNEY TO BE NOTICED*

**Jina Lee Choi**
Securities and Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

(415) 705–2372
Email: choij@sec.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Elon Musk**                                    represented by    **Alex Spiro**
                                                                    Quinn Emanuel Urquhart & Sullivan
                                                                    (NYC)
                                                                    51 Madison Avenue
                                                                    New York, NY 10010
                                                                    212–849–7000
                                                                    Fax: 212–849–7100
                                                                    Email: alexspiro@quinnemanuel.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Alison Lynn Plessman**
                                                                    Irell & Manella LLP
                                                                    1800 Avenue of The Stars, Suite 900
                                                                    Los Angeles, CA 90067
                                                                    (310)–203–7563
                                                                    Fax: (310)–203–7199
                                                                    Email: aplessman@irell.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Dane Hal Butswinkas**
                                                                    Williams & Connolly LLP
                                                                    725 Twelfth Street, NW
                                                                    Washington, DC 20005
                                                                    (202) 434–5110
                                                                    Fax: (202) 434–5029
                                                                    Email: dbutswinkas@wc.com
                                                                    *TERMINATED: 03/01/2019*
                                                                    *LEAD ATTORNEY*

                                                                    **John Charles Hueston**
                                                                    Irell & Manella LLP
                                                                    840 Newport Center Drive, Suite 400
                                                                    Newport Beach, CA 92660
                                                                    (949)–760–0991
                                                                    Fax: (949)–760–5289
                                                                    Email: jhueston@hueston.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Marshall Alan Camp**
                                                                    Hueston Hennigan LLP
                                                                    523 West 6th Street, Suite 400
                                                                    Los Angeles, CA 90014
                                                                    213–788–4541
                                                                    Email: mcamp@irell.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Moez M. Kaba**
                                                                    Hueston Hennigan LLP
                                                                    523 West 6th Street, Suite 400
                                                                    Los Angeles, CA 90014
                                                                    (213) 788–4340

Fax: (888) 775–0898
Email: mkaba@hueston.com *(Inactive)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Anthony Burck**
Quinn Emmanuel Urquhart & Sullivan,
LLP
777 6th Street NW 11th floor
Washington, DC 20005
202–538–8000
Fax: 202–538–8100
Email: williamburck@quinnemanuel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda M. MacDonald**
Williams & Connolly LLP
725 Twelfth Street, Nw
Washington, DC 20005
(202) 434–5416
Fax: (202) 434–5029
Email: amacdonald@wc.com
*TERMINATED: 03/01/2019*

**Steven M.. Farina**
Williams & Connolly
725 12th Street
NW
Washington, DC 20005
(202) 434–5000
Fax: (202)–434–5029
Email: sfarina@wc.com
*TERMINATED: 03/01/2019*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/27/2018 | 1 | COMPLAINT against Elon Musk. Document filed by United States Securities and Exchange Commission.(Choi, Jina) (Entered: 09/27/2018) |
| 09/27/2018 | 2 | CIVIL COVER SHEET filed. (Choi, Jina) (Entered: 09/27/2018) |
| 09/28/2018 | | ***NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Jina Choi. The following case opening statistical information was erroneously selected/entered: Cause of Action code 12:12; Jury Demand code n (None); County code New York; Fee Status code pd (paid);. The following correction(s) have been made to your case entry: the Cause of Action code has been modified to 15:0078; the Jury Demand code has been modified to p (Plaintiff); the County code has been modified to XX Out of State; the Fee Status code has been modified to wv (waived). (laq)** (Entered: 09/28/2018) |
| 09/28/2018 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above–entitled action is assigned to Judge Alison J. Nathan. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (laq) (Entered: 09/28/2018) |
| 09/28/2018 | | Magistrate Judge Gabriel W. Gorenstein is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (laq) (Entered: 09/28/2018) |

| 09/28/2018 | | Case Designated ECF. (laq) (Entered: 09/28/2018) |
|---|---|---|
| 09/28/2018 | 3 | MOTION for Cheryl L. Crumpton to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Affidavit of Cheryl L. Crumpton in Support of Motion to Appear Pro Hac Vice, # 2 Exhibit 1– DC Certificate of Good Standing, # 3 Exhibit 2– Texas Certificate of Good Standing, # 4 Text of Proposed Order to Appear Pro Hac Vice)(Crumpton, Cheryl) (Entered: 09/28/2018) |
| 09/28/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 3 MOTION for Cheryl L. Crumpton to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 09/28/2018) |
| 09/28/2018 | 4 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 2/1/2019 at 04:00 PM in Courtroom 906, 40 Centre Street, New York, NY 10007 before Judge Alison J. Nathan. (As further set forth in this Order.) Parties ordered to submit via ECF proposed case management plan and joint letter seven days before conference. (Signed by Judge Alison J. Nathan on 9/28/2018) (cf) (Entered: 09/28/2018) |
| 09/28/2018 | 5 | MOTION for E. Barrett Atwood to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Affidavit of E. Barrett Atwood, # 2 Exhibit Good Standing Certificate (CA), # 3 Exhibit Good Standing Certificate (DC), # 4 Text of Proposed Order Granting Pro Hac Vice of E. Barrett Atwood)(Atwood, Edward) (Entered: 09/28/2018) |
| 09/28/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 5 MOTION for E. Barrett Atwood to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (jc)** (Entered: 09/28/2018) |
| 09/29/2018 | 6 | CONSENT MOTION for Judgment *According to the Parties' Settlement*. Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit 1– Consent to Entry of Judgment, # 2 Exhibit 2– Proposed Final Judgment)(Choi, Jina) (Entered: 09/29/2018) |
| 10/02/2018 | 7 | ORDER granting 3 Motion for Cheryl L. Crumpton to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 10/02/2018) |
| 10/02/2018 | 8 | ORDER granting 5 Motion for E. Barrett Atwood to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 10/02/2018) |
| 10/04/2018 | 9 | ORDER: No later than October 11, 2018, the parties shall file a joint letter not to exceed ten pages double–spaced, explaining why the Court should approve the proposed consent judgment. (As further set forth in this Order.) (Signed by Judge Alison J. Nathan on 10/4/2018) (cf) (Entered: 10/04/2018) |
| 10/05/2018 | 10 | NOTICE OF APPEARANCE by Dane Hal Butswinkas on behalf of Elon Musk. (Butswinkas, Dane) (Entered: 10/05/2018) |
| 10/05/2018 | 11 | MOTION for Steven M. Farina to Appear Pro Hac Vice *on behalf of Elon Musk*. Filing fee $ 200.00, receipt number 0208–15667351. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Elon Musk. (Attachments: # 1 Affidavit Of Steven M. Farina In Support Of Motion To Appear Pro Hac Vice, # 2 Exhibit DC Certificate Of Good Standing, # 3 Text of Proposed Order To Appear Pro Hac Vice)(Farina, Steven) (Entered: 10/05/2018) |
| 10/06/2018 | 12 | MOTION for Amanda M. MacDonald to Appear Pro Hac Vice *on behalf of Elon Musk*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Elon Musk. (Attachments: # 1 Affidavit Of Amanda M. MacDonald In Support Of Motion To Appear Pro Hac Vice, # 2 Exhibit 1 – DC Certificate of Good Standing, # 3 Exhibit 2 – Illinois Certificate of Good Standing, # 4 Text of Proposed Order To Appear Pro Hac Vice)(MacDonald, Amanda) (Entered: |

| | | 10/06/2018) |
|---|---|---|
| 10/06/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 11 MOTION for Steven M. Farina to Appear Pro Hac Vice** *on behalf of Elon Musk*. **Filing fee $ 200.00, receipt number 0208–15667351. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 10/06/2018) |
| 10/06/2018 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 12 MOTION for Amanda M. MacDonald to Appear Pro Hac Vice** *on behalf of Elon Musk*. **Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 10/06/2018) |
| 10/11/2018 | 13 | JOINT BRIEF re: 6 CONSENT MOTION for Judgment *According to the Parties' Settlement*. . Document filed by United States Securities and Exchange Commission.(Crumpton, Cheryl) (Entered: 10/11/2018) |
| 10/16/2018 | 14 | FINAL JUDGMENT AS TO DEFENDANT ELON MUSK: The Securities and Exchange Commission having filed a Complaint and Defendant Elon Musk having entered a general appearance; consented to the Court's jurisdiction over Defendant in this matter only and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction and except as otherwise provided herein in paragraph III); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment: IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 US.C. § 78j(b)] and Rule 10b–5 promulgated thereunder [17 C.F.R. § 240.10b–5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security; as set forth herein. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay a civil penalty in the amount of $20,000,000 to the Securities and Exchange Commission pursuant to Section 21(d)(3) of the Exchange Act [15 U.S. C. § 78u(d)(3)]. Defendant shall make this payment within 14 days after entry of this Final Judgment. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment. (Signed by Judge Alison J. Nathan on 10/16/2018) (mro) (Entered: 10/16/2018) |
| 02/05/2019 | 15 | CONSENT MOTION to Consolidate Cases 1:18–cv–8947 *for Distribution Purposes*. Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order Proposed Order)(Atwood, Edward) (Entered: 02/05/2019) |
| 02/05/2019 | 16 | MEMORANDUM OF LAW in Support re: 15 CONSENT MOTION to Consolidate Cases 1:18–cv–8947 *for Distribution Purposes*. . Document filed by United States Securities and Exchange Commission. (Atwood, Edward) (Entered: 02/05/2019) |
| 02/06/2019 | 17 | ORDER TO CONSOLIDATE ACTIONS FOR DISTRIBUTION PURPOSES granting 15 Letter Motion to Consolidate Cases. IT IS HEREBY ORDERED: 1. Pursuant to Final Judgments entered in these two Securities and Exchange Commission ("SEC") enforcement actions, Defendants Elon Musk and Tesla, Inc. have paid penalties in the total amount of $40,000,000.00. These funds were paid into an interest– bearing account at the Bureau of Fiscal Services of the U.S. Treasury Department (the "Distribution Funds"). Each final judgment provides, in part, that the Distribution Funds may be distributed pursuant to the Fair Fund provisions of the Section 308(a) of the Sarbanes–Oxley Act of 2002, as amended by the Dodd– Frank Act of 2010, 15 U.S.C. § 7246(a). 2. The Court hereby orders that the above–captioned actions are consolidated for the purposes of distribution of funds to harmed investors. (Signed by Judge Alison J. Nathan on 2/6/2019) (anc) (Entered: 02/06/2019) |
| 02/25/2019 | 18 | MOTION for Order to Show Cause *Why Defendant Elon Musk Should Not Be Held in Contempt and Memorandum of Law in Support*. Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Text of Proposed Order)(Crumpton, Cheryl) (Entered: 02/25/2019) |

| 02/26/2019 | 19 | ORDER REQUIRING DEFENDANT ELON TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S FINAL JUDGMENT: NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendant Elon Musk shall submit to this Court by March 11, 2019, briefing to show cause, if any, why he should not be found in contempt of the Court's Final Judgment. SO ORDERED. (Show Cause Response due by 3/11/2019.)Motions terminated: 18 MOTION for Order to Show Cause *Why Defendant Elon Musk Should Not Be Held in Contempt and Memorandum of Law in Support*. filed by United States Securities and Exchange Commission. (Signed by Judge Alison J. Nathan on 2/26/2019) (kv) (Entered: 02/26/2019) |
|---|---|---|
| 02/28/2019 | 20 | NOTICE of Substitution of Attorney. Old Attorney: Dane H. Butswinkas, Steven M. Farina, and Amanda M. MacDonald, New Attorney: John C. Hueston, Marshall A. Camp, Alison L. Plessman, and Moez M. Kaba, Address: Hueston Hennigan LLP, 523 W. 6th Street, Suite 400, Los Angeles, California, USA 90014, (213) 788–4340. Document filed by Elon Musk. (Attachments: # 1 Affidavit Declaration of Steven M. Farina)(Farina, Steven) (Entered: 02/28/2019) |
| 03/01/2019 | 21 | STIPULATION AND NOTICE OF SUBSTITUTION OF COUNSEL: Pursuant to Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned hereby stipulate and consent to the substitution of the law firm Hueston Hennigan LLP, by and through its attorneys John C. Hueston, Marshall A. Camp, Alison L. Plessman, and Moez M. Kaba as attorneys of record for Defendant Elon Musk in the above–captioned action in place and instead of the law firm ofWilliams & Connolly LLP, and its attorneys Dane H. Butswinkas, Steven M. Farina, and Amanda M. MacDonald. The undersigned request this Court to so–order the substitution, and as further set forth in this Order. SO ORDERED. Attorney Amanda M. MacDonald, Dane Hal Butswinkas and Steven M. Farina terminated. (Signed by Judge Alison J. Nathan on 3/1/2019) (jca) (Entered: 03/01/2019) |
| 03/01/2019 |  | Attorney John Charles Hueston, Marshall Alan Camp, Alison Lynn Plessman, Moez M. Kaba for Elon Musk added. (Signed by Judge Alison J. Nathan on 3/1/2019) (jca) (Entered: 03/01/2019) |
| 03/05/2019 | 22 | NOTICE OF APPEARANCE by Moez M. Kaba on behalf of Elon Musk. (Kaba, Moez) (Entered: 03/05/2019) |
| 03/06/2019 | 23 | MOTION for Alison Plessman to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC–16453275. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Elon Musk. (Attachments: # 1 Text of Proposed Order)(Plessman, Alison) (Entered: 03/06/2019) |
| 03/07/2019 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 23 MOTION for Alison Plessman to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC–16453275. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 03/07/2019) |
| 03/07/2019 | 24 | ORDER granting 23 Motion for Alison Plessman to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) Transmission to Attorney Services/Help Desk. (Entered: 03/07/2019) |
| 03/07/2019 | 25 | MOTION for John Charles Hueston to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC–16456937. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Elon Musk. (Attachments: # 1 Text of Proposed Order)(Hueston, John) (Entered: 03/07/2019) |
| 03/07/2019 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 25 MOTION for John Charles Hueston to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC–16456937. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 03/07/2019) |
| 03/08/2019 | 26 | ORDER granting 25 Motion for Charles Hueston to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) Transmission to Attorney Services/Help Desk. (Entered: 03/08/2019) |

| | | |
|---|---|---|
| 03/11/2019 | 27 | RESPONSE TO ORDER TO SHOW CAUSE re: 19 Order to Show Cause,,, Terminate Motions,,. Document filed by Elon Musk. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Affidavit Declaration of Elon R. Musk, # 10 Affidavit Declaration of Christopher F. Noe)(Hueston, John) (Entered: 03/11/2019) |
| 03/12/2019 | 28 | LETTER MOTION for Leave to File Reply Memorandum addressed to Judge Alison J. Nathan from Cheryl Crumpton dated March 12, 2019. Document filed by United States Securities and Exchange Commission.(Crumpton, Cheryl) (Entered: 03/12/2019) |
| 03/12/2019 | 29 | ORDER granting 28 Letter Motion for Leave to File Document. The Government's motion for leave to file a reply memorandum is granted. The Government shall file its reply memorandum no later than March 19, 2019. No later than March 26, 2019, each party shall indicate in writing whether it is seeking an evidentiary hearing on this matter. SO ORDERED. (Signed by Judge Alison J. Nathan on 3/12/2019) (kv) (Entered: 03/12/2019) |
| 03/18/2019 | 30 | REPLY to Response to Motion re: 18 MOTION for Order to Show Cause *Why Defendant Elon Musk Should Not Be Held in Contempt and Memorandum of Law in Support*. . Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit 6, # 2 Exhibit 7, # 3 Exhibit 8, # 4 Exhibit 9, # 5 Exhibit 10, # 6 Exhibit 11, # 7 Exhibit 12)(Crumpton, Cheryl) (Entered: 03/18/2019) |
| 03/18/2019 | 31 | LETTER MOTION for Leave to File Sur–Reply Memorandum addressed to Judge Alison J. Nathan from John C. Hueston dated March 18, 2019. Document filed by Elon Musk.(Hueston, John) (Entered: 03/18/2019) |
| 03/21/2019 | 32 | ORDER granting 31 Letter Motion for Leave to File Document. Defendant may file a sur–reply memorandum of no more than 8 pages by March 22, 2019. (Signed by Judge Alison J. Nathan on 3/21/2019) (cf) (Entered: 03/21/2019) |
| 03/21/2019 | | Set/Reset Deadlines: Surreplies due by 3/22/2019. (cf) (Entered: 03/21/2019) |
| 03/22/2019 | 33 | REPLY to Response to Motion re: 18 MOTION for Order to Show Cause *Why Defendant Elon Musk Should Not Be Held in Contempt and Memorandum of Law in Support*. *Sur–Reply in Response to Order to Show Cause Why Defendant Elon Musk Should Not Be Held In Contempt*. Document filed by Elon Musk. (Attachments: # 1 Exhibit 9, # 2 Exhibit 10, # 3 Exhibit 11)(Hueston, John) (Entered: 03/22/2019) |
| 03/25/2019 | 34 | LETTER addressed to Judge Alison J. Nathan from Cheryl Crumpton dated March 25, 2019 re: the SEC's Position on an Evidentiary Hearing. Document filed by United States Securities and Exchange Commission.(Crumpton, Cheryl) (Entered: 03/25/2019) |
| 03/25/2019 | 35 | LETTER addressed to Judge Alison J. Nathan from John C. Hueston dated March 25, 2019 re: Evidentiary Hearing. Document filed by Elon Musk.(Hueston, John) (Entered: 03/25/2019) |
| 03/26/2019 | 36 | ORDER re: 35 Letter filed by Elon Musk, 34 Letter filed by United States Securities and Exchange Commission. Accordingly, the Court will decide Plaintiff's motion without an evidentiary hearing. The Court will, however, hold oral argument, which is hereby scheduled for April 4, 2019 at 2:00 p.m. SO ORDERED. (Oral Argument set for 4/4/2019 at 02:00 PM before Judge Alison J. Nathan.) (Signed by Judge Alison J. Nathan on 3/26/2019) (kv) (Entered: 03/26/2019) |
| 04/03/2019 | 37 | MOTION for Steven Buchholz to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Affidavit of Steven Buchholz in Support of Motion, # 2 California Certificate of Good Standing, # 3 Text of Proposed Order to Appear Pro Hac Vice)(Buchholz, Steven) (Entered: 04/03/2019) |
| 04/03/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 37 MOTION for Steven Buchholz to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (jc)** (Entered: 04/03/2019) |

| 04/04/2019 | 38 | ORDER granting 37 Motion for Steven Buchholz to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 04/04/2019) |
|---|---|---|
| 04/05/2019 | 39 | ORDER: For the reasons stated on the record at oral argument yesterday, the parties are required to meet and confer for at least one hour in an effort to resolve the pending motion to hold Mr. Musk in contempt, as well as any modifications to the consent judgment and Tesla's Senior Executives Communications Policy. No later than April 18, 2019, the parties shall submit a joint letter indicating whether they have reached an agreement. If no agreement has been reached, the Court will issue a decision resolving the current SEC motion to hold Mr. Musk in contempt. If Mr. Musk is held in contempt, the Court will allow further briefing on sanctions. (Signed by Judge Alison J. Nathan on 4/5/2019) (rro) (Entered: 04/05/2019) |
| 04/05/2019 | | Minute Entry for proceedings held before Judge Alison J. Nathan. Oral argument held on SEC's motion for contempt. The Court reserved decision. (Court Reporter Paula Speer) (qs) (Entered: 04/05/2019) |
| 04/16/2019 | 40 | TRANSCRIPT of Proceedings re: conference held on 4/4/2019 before Judge Alison J. Nathan. Court Reporter/Transcriber: Rebecca Forman, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/7/2019. Redacted Transcript Deadline set for 5/17/2019. Release of Transcript Restriction set for 7/15/2019.(McGuirk, Kelly) (Entered: 04/16/2019) |
| 04/16/2019 | 41 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 4/4/19 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 04/16/2019) |
| 04/18/2019 | 42 | STATUS REPORT. *Regarding Efforts to Resolve the SEC's Pending Motion* Document filed by United States Securities and Exchange Commission.(Crumpton, Cheryl) (Entered: 04/18/2019) |
| 04/18/2019 | 43 | MEMO ENDORSEMENT on re: 42 Status Report filed by United States Securities and Exchange Commission. ENDORSEMENT: SO ORDERED. (Signed by Judge Alison J. Nathan on 4/18/2019) (kv) (Entered: 04/18/2019) |
| 04/25/2019 | 44 | STATUS REPORT. *Regarding Efforts to Resolve the SEC's Pending Motion* Document filed by United States Securities and Exchange Commission.(Crumpton, Cheryl) (Entered: 04/25/2019) |
| 04/26/2019 | 45 | MEMO ENDORSEMENT on re: 44 Status Report filed by United States Securities and Exchange Commission. ENDORSEMENT: SO ORDERED. (Signed by Judge Alison J. Nathan on 4/26/2019) (kv) (Entered: 04/26/2019) |
| 04/26/2019 | 46 | CONSENT MOTION to Amend/Correct *Final Judgment*. Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit 1 (Consent of Defendant Elon Musk), # 2 Exhibit 2 (Proposed Order Amending Final Judgment)(Crumpton, Cheryl) (Entered: 04/26/2019) |
| 04/30/2019 | 47 | ORDER AMENDING FINAL JUDGMENT AS TO DEFENDANT ELON MUSK IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that subpart (b) of paragraph IV of the Final Judgment is replaced and superseded by the following herein, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all other provisions of the Final Judgment shall remain in effect. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction over this matter for the purposes of enforcing the terms of the Final Judgment, as amended by this Order. (And as further set forth in this Order). (Signed by Judge Alison J. Nathan on 4/30/2019) (jca) (Entered: 04/30/2019) |
| 05/01/2019 | 48 | ORDER re: 47 Amended Judgment. In the consent motion to amend the Final Judgment, the parties stated that "if the Court grants this motion and enters the proposed Order, this will resolve the Commission's pending motion." Dkt. No. 46 at 4. |

| | | |
|---|---|---|
| | | The Court has now granted the motion and entered the proposed Order amending the Final Judgment. Dkt. No. 47. Accordingly, the SEC's contempt motion, Dkt. No. 18, is denied as moot. SO ORDERED. (Signed by Judge Alison J. Nathan on 5/1/2019) (kv) (Entered: 05/01/2019) |
| 10/03/2019 | 49 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** MOTION for Adriene Mixon to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Affidavit, # 2 Exhibit Certificate of Standing CA, # 3 Exhibit Certificate of Standing NY, # 4 Text of Proposed Order)(Mixon, Adriene) Modified on 10/3/2019 (wb). (Entered: 10/03/2019) |
| 10/03/2019 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE–FILE Document No. 49 MOTION for Adriene Mixon to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from Supreme Court of California;. Re–file the motion as a Motion to Appear Pro Hac Vice – attach the correct signed PDF – select the correct named filer/filers – attach valid Certificates of Good Standing issued within the past 30 days – attach Proposed Order.. (wb)** (Entered: 10/03/2019) |
| 12/16/2019 | 50 | MOTION for Adriene Mixon to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Affidavit, # 2 Exhibit Certificate of Standing NY, # 3 Exhibit Certificate of Standing CA, # 4 Text of Proposed Order)(Mixon, Adriene) (Entered: 12/16/2019) |
| 12/17/2019 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 50 MOTION for Adriene Mixon to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/17/2019) |
| 12/18/2019 | 51 | ORDER granting 50 Motion for Adriene Mixon to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) Transmission to Attorney Services/Help Desk. (Entered: 12/18/2019) |
| 02/24/2020 | 52 | MOTION Motion to Establish A Fair Fund and Appoint Tax Administrator . Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order).(Mixon, Adriene) (Entered: 02/24/2020) |
| 02/26/2020 | 53 | ORDER ESTABLISHING A FAIR FUND, APPOINTING A TAX ADMINISTRATOR, AND AUTHORIZING PAYMENT OF TAX RELATED FEES, EXPENSES, AND OBLIGATIONS granting 52 Motion for to Establish A Fair Fund and Appoint Tax Administrator. IT IS HEREBY ORDERED: 1. The Motion is GRANTED. 2. A Fair Fund is hereby established pursuant to Section 308(a) of the Sarbanes–Oxley Act of 2002, as amended by the Dodd–Frank Act of 2010 [15 U.S.C. §7246(a)] for the $40,000,000.00 paid by Musk and Telsa, along with any accrued interest and earnings thereon (the "Fair Fund"). 3. Miller Kaplan Arase LLP ("Miller Kaplan") is appointed as the Tax Administrator to execute all income tax reporting requirements, including the preparation and filing of tax returns, for all funds under the Court's jurisdiction in this case. (as further set forth herein). 7. The SEC is authorized to approve and arrange payment of all future tax obligations owed by the Fair Fund and tax administrator fees and expenses owed by the Fair Fund directly from the Fair Fund without further order of this Court. All payments for taxes and the fees and expenses of the Tax Administrator shall be reported to the Court in a final accounting. (Signed by Judge Alison J. Nathan on 2/26/2020) (kv) Transmission to Finance Unit (Cashiers) for processing. (Entered: 02/26/2020) |
| 04/30/2021 | 54 | MOTION Motion to Appoint Distribution Agent . Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Text of Proposed Order).(Mixon, Adriene) (Entered: 04/30/2021) |
| 05/12/2021 | 55 | ORDER APPOINTING A DISTRIBUTION AGENT AND AUTHORIZING PAYMENT OF ADMINISTRATIVE FEES AND EXPENSES granting 54 Motion for Appoint Distribution Agent. re: 54 MOTION Motion to Appoint Distribution Agent . IT IS HEREBY ORDERED that: 1. The Motion is GRANTED; 2. Rust is appointed to serve as Distribution Agent (the "Distribution Agent") for the Fair Fund to assist in |

| | | |
|---|---|---|
| | | overseeing the administration and the distribution of the Fair Fund in coordination with the Commission staff, pursuant to the distribution plan (the "Plan") to be approved by this Court; 3. Rust shall perform services in accordance with the pricing schedule and cost proposal submitted by the Distribution Agent to the Commission. Such services may include, but are not limited to, developing a Plan, determining the identities of injured investors and the amounts lost, establishing a claims process to evaluate and verify claims, fielding inquiries from investors and managing the ultimate distribution of the Fair Fund; 4.Rust shall coordinate with the Court–appointed Tax Administrator, Miller Kaplan Arase LLP, to ensure that the Fair Fund, a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code, and regulated regulations, 26 C.F.R. §§ 1.468B–1 through 5, complies with all related legal and regulatory requirements, including but not limited to, satisfying any reporting or withholding requirements imposed on distribution from the QSF; 5. Rust shall invoice all administrative fees and expenses incurred in the administration and distribution of the Fair Fund to the Commission for review and approval by the Commission. Any unresolved objections to an invoiced amount will be referred to the Court; 6. Within forty– five (45) days of the Court's approval of the Plan, Rust will provide a status report, and thereafter, will provide additional reports and quarterly account statements within thirty (30) days after the end of every quarter. Moreover, once the Fair Fund has been transferred to an escrow account opened by Rust as Distribution Agent, Rust will include with its quarterly reports a quarterly accounting report in a format to be provided by the Commission. The status report and quarterly accounting report will inform the Court and the Commission of the activities and status of the Fair Fund during the relevant period and will specify, at a minimum (a) the location of the account(s) comprising the Fair Fund; and (b) an interim accounting of all monies in the Fair Fund as of the most recent month–end, including the value of the account(s), all monies earned or received into the account(s), funds distributed to harmed investors under the Court approved Plan, and any monies expended from the Fair Fund, including fees, expenses, and taxes incurred by, or imposed on, the Fair Fund; 7. Upon completing its duties as Distribution Agent, Rust, working with the Court–appointed Tax Administrator, Miller Kaplan Arase LLP, will prepare a final report and final accounting for filing with the Court, in a format to be provided by the Commission; 8. Rust may be removed sua sponte at any time by the Court or upon motion of the Commission and replaced with a successor. In the event Rust decides to resign, it will first give written notice to the Court and to Commission staff of such intention, and the resignation, if permitted, will not be effective until the Court appoints a successor; 9. The Distribution Agent will be entitled to charge reasonable fees and related expenses incurred in the performance of its duties, in accordance with the cost proposal submitted to the Commission staff. The Commission is authorized to approve and arrange payment of the fees and expenses of the Distribution Agent directly from the Fair Fund without further order of this Court. The Distribution Agent will submit invoices of all fees and expenses incurred in connection with its duties to the Commission staff for review and, as appropriate, payment. All payments will be reflected in the final accounting referenced herein; and 10. The Court will retain exclusive jurisdiction over the distribution, including, but not limited to, claims against the Distribution Agent asserting liability for violation of any duty imposed by the Plan or other Court order. IT IS SO ORDERED. (Signed by Judge Alison J. Nathan on 5/12/2021) (kv) (Entered: 05/12/2021) |
| 12/21/2021 | 56 | ORDER: The Court on May 12, 2021, appointed Rust Consulting as distribution agent for the Fair Fund. No. 18–cv–8865, Dkt. No. 55. That order required that Rust file status reports and quarterly accounting statements within 30 days of the end of each quarter. Id. Paragraph 6. The Court has received no such reports. Rust is hereby ordered to file a status report and the most recent quarterly accounting statement by January 7, 2022. SO ORDERED. (Signed by Judge Alison J. Nathan on 12/21/2021) (vfr) (Entered: 12/21/2021) |
| 01/05/2022 | 57 | STATUS REPORT. *of Rust Consulting* Document filed by United States Securities and Exchange Commission..(Mixon, Adriene) (Entered: 01/05/2022) |
| 01/10/2022 | 58 | MEMO ENDORSEMENT on re: 57 Status Report filed by United States Securities and Exchange Commission. ENDORSEMENT: SO ORDERED. (Signed by Judge Alison J. Nathan on 1/10/2022) (vfr) (Entered: 01/10/2022) |

| 02/17/2022 | 59 | NOTICE OF APPEARANCE by William Anthony Burck on behalf of Elon Musk..(Burck, William) (Entered: 02/17/2022) |
|---|---|---|
| 02/17/2022 | 60 | NOTICE OF APPEARANCE by Alex Spiro on behalf of Elon Musk..(Spiro, Alex) (Entered: 02/17/2022) |
| 02/17/2022 | 61 | LETTER addressed to Judge Alison J. Nathan from Tesla, Inc. and Elon Musk dated February 17, 2022 re: SEC Conduct. Document filed by Elon Musk..(Spiro, Alex) (Entered: 02/17/2022) |
| 02/17/2022 | 62 | MEMO ENDORSEMENT on re: 61 Letter filed by Elon Musk. ENDORSEMENT: The Commission shall file a response to the Defendants' letter by February 24, 2022. SO ORDERED. (Signed by Judge Alison J. Nathan on 2/17/2022) (vfr) (Entered: 02/17/2022) |
| 02/18/2022 | 63 | LETTER addressed to Judge Alison J. Nathan from Steven Buchholz dated 02/18/2022 re: Docket No. 61. Document filed by United States Securities and Exchange Commission..(Buchholz, Steven) (Entered: 02/18/2022) |
| 02/21/2022 | 64 | LETTER addressed to Judge Alison J. Nathan from Tesla, Inc. and Elon Musk dated February 21, 2022 re: Reply Re: SEC Conduct. Document filed by Elon Musk..(Spiro, Alex) (Entered: 02/21/2022) |
| 02/24/2022 | 65 | ORDER: The Court is in receipt of the Defendants Elon Musk and Tesla, Inc.'s letter dated February 17, 2022, as well as the Commission's response dated February 18, 2022, and the Defendants' further letter dated February 21, 2022. Dkt. Nos. 61, 63, 64. The Defendants' precise application to the Court is unclear. They request a conference to address "why the SEC has failed to distribute these funds to shareholders but has chosen to spend its energy and resources investigating Mr. Musk's and Tesla's compliance with the consent decree by issuing subpoenas unilaterally, without Court approval." Dkt. No. 61 at 1. The Court DENIES this request for a conference. To the extent that the Defendants seek to impose a deadline on the Commission's implementation of a Plan of Distribution of the Fair Fund, the Defendants may file a motion and submit briefing in support of doing so. Otherwise, the Court cannot enforce a deadline that does not currently exist. E.g., Dkt. Nos. 14, 53, 55. Further, to the extent that the Defendants have a non–frivolous basis to quash a subpoena in light of the Court's prior orders in this case, the Defendants may make a motion, supported by briefing, that requests specific relief from the Court. The Defendants also seek "on–the–record assurance that the Commission has not leaked investigative details in violation of its own rules and policies, and is otherwise acting in accordance with the law." Dkt. No. 64 at 2–3. The letter does not contain specific facts or legal authority to justify this request. Moreover, the Court doubts that the regulations invoked by the Defendants, 17 C.F.R. §§ 203.2, 203.5, are judicially enforceable against the Commission, see LaMorte v. Mansfield, 438 F.2d 448, 450–51 (2d Cir. 1971) (explaining that the regulations describe only "the discretion possessed by the agency in determining whether to disclose information," a privilege that "is the agency's, not the witness'[s]"). The request is DENIED. SO ORDERED. (Signed by Judge Alison J. Nathan on 2/24/2022) (vfr) (Entered: 02/24/2022) |
| 02/24/2022 | 66 | MOTION for Melissa J. Armstrong to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing, # 3 Text of Proposed Order).(Armstrong, Melissa) (Entered: 02/24/2022) |
| 02/25/2022 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 66 MOTION for Melissa J. Armstrong to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/25/2022) |
| 02/28/2022 | 67 | ORDER granting 66 Motion for Melissa J. Armstrong to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (kwi) (Entered: 02/28/2022) |
| 03/08/2022 | 68 | MOTION to Seal *Exhibits to the Memorandum of Law*. Document filed by Elon Musk..(Spiro, Alex) (Entered: 03/08/2022) |

| 03/08/2022 | 69 | ***SELECTED PARTIES*** LETTER addressed to Judge Alison J. Nathan from Alex Spiro dated March 8, 2022 re: Sealed Exhibits. Document filed by United States Securities and Exchange Commission, Elon Musk. (Attachments: # 1 Exhibit A to the Memorandum of Law, # 2 Exhibit B to the Memorandum of Law, # 3 Exhibit D to the Memorandum of Law)Motion or Order to File Under Seal: 68 .(Spiro, Alex) (Entered: 03/08/2022) |
|---|---|---|
| 03/08/2022 | 70 | MOTION to Quash Certain Portions of SEC Subpoena & to Terminate Consent Decree . Document filed by Elon Musk..(Spiro, Alex) (Entered: 03/08/2022) |
| 03/08/2022 | 71 | MEMORANDUM OF LAW in Support re: 70 MOTION to Quash Certain Portions of SEC Subpoena & to Terminate Consent Decree . . Document filed by Elon Musk. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E).(Spiro, Alex) (Entered: 03/08/2022) |
| 03/08/2022 | 72 | DECLARATION of Elon Musk in Support re: 70 MOTION to Quash Certain Portions of SEC Subpoena & to Terminate Consent Decree .. Document filed by Elon Musk. (Attachments: # 1 Exhibit A).(Spiro, Alex) (Entered: 03/08/2022) |
| 03/08/2022 | 73 | PROPOSED ORDER. Document filed by Elon Musk. Related Document Number: 70 ..(Spiro, Alex) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 03/08/2022) |
| 03/08/2022 | 74 | LETTER addressed to Judge Alison J. Nathan from Alex Spiro dated March 8, 2022 re: Request for Oral Argument. Document filed by Elon Musk..(Spiro, Alex) (Entered: 03/08/2022) |
| 03/08/2022 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 73 Proposed Order was reviewed and approved as to form. (km)** (Entered: 03/08/2022) |
| 03/08/2022 | 75 | ORDER: The Commission is hereby ORDERED to file a response to Defendant's motions by March 22, 2022. Dkt. Nos. 68, 70. Defendant shall file a reply, if any, by March 29, 2022. SO ORDERED. ( Responses due by 3/22/2022, Replies due by 3/29/2022.) (Signed by Judge Alison J. Nathan on 3/8/2022) (vfr) (Entered: 03/08/2022) |
| 03/08/2022 | 76 | MOTION Motion to Approve Distribution Plan . Document filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit Distribution Plan, # 2 Exhibit Plan of Allocation, # 3 Text of Proposed Order).(Mixon, Adriene) (Entered: 03/08/2022) |
| 03/17/2022 | 77 | ORDER: The Court is in receipt of the Commission's motion to approve the distribution plan. Dkt. No. 76. The Defendants shall file a response, if any, by March 22, 2022. SO ORDERED. (Responses due by 3/22/2022) (Signed by Judge Alison J. Nathan on 3/17/2022) (jca) (Entered: 03/17/2022) |
| 03/22/2022 | 78 | RESPONSE in Opposition to Motion re: 70 MOTION to Quash Certain Portions of SEC Subpoena & to Terminate Consent Decree . . Document filed by United States Securities and Exchange Commission..(Armstrong, Melissa) (Entered: 03/22/2022) |
| 03/25/2022 | 79 | ORDER APPROVING DISTRIBUTION PLAN granting 76 Motion to Approve Distribution Plan . IT IS HEREBY ORDERED that: 1. The Motion is GRANTED; and 2. The Distribution Plan is approved in its entirety. The Distribution Plan shall govern the administration and distribution of the Fair Fund previously established by Order entered February 26, 2020. IT IS SO ORDERED. (Signed by Judge Alison J. Nathan on 3/25/2022) (vfr) (Entered: 03/25/2022) |
| 03/29/2022 | 80 | REPLY to Response to Motion re: 70 MOTION to Quash Certain Portions of SEC Subpoena & to Terminate Consent Decree . . Document filed by Elon Musk..(Spiro, Alex) (Entered: 03/29/2022) |
| 04/12/2022 | | NOTICE OF CASE REASSIGNMENT to Judge Ronnie Abrams. Judge Alison J. Nathan is no longer assigned to the case. (laq) (Entered: 04/12/2022) |
| 04/13/2022 | | NOTICE OF CASE REASSIGNMENT to Judge Lewis J. Liman. Judge Ronnie Abrams is no longer assigned to the case. (aea) (Entered: 04/13/2022) |

| 04/27/2022 | 81 | OPINION AND ORDER re: 70 MOTION to Quash Certain Portions of SEC Subpoena & to Terminate Consent Decree filed by Elon Musk. The motion to quash the subpoena and to terminate the consent decree is DENIED. The Clerk of Court is respectfully directed to close Dkt. No. 70. SO ORDERED. (Signed by Judge Lewis J. Liman on 4/27/2022) (va) (Entered: 04/27/2022) |
|---|---|---|
| 04/29/2022 | 82 | ORDER granting 68 Motion to Seal. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (ra) (Entered: 04/29/2022) |
| 05/09/2022 | 83 | STATUS REPORT. *Progress Report of Rust Consulting* Document filed by United States Securities and Exchange Commission..(Mixon, Adriene) (Entered: 05/09/2022) |
| 05/23/2022 | 84 | LETTER addressed to Judge Lewis J. Liman from Alex Spiro dated May 23, 2022 re: Unopposed Motion to Amend. Document filed by Elon Musk..(Spiro, Alex) (Entered: 05/23/2022) |
| 05/25/2022 | 85 | MEMO ENDORSEMENT: on re: 84 Letter filed by Elon Musk. ENDORSEMENT: The Court's Opinion was not intended to express a finding that Musk did not preclear the communications, and it should not be interpreted as such. That issue is not before the Court, and the Court has no views on it. SO ORDERED. (Signed by Judge Lewis J. Liman on 5/25/2022) (ama) (Entered: 05/25/2022) |
| 06/15/2022 | 86 | NOTICE OF APPEAL from 81 Memorandum & Opinion,. Document filed by Elon Musk. Filing fee $ 505.00, receipt number ANYSDC−26283268. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Spiro, Alex) (Entered: 06/15/2022) |
| 06/15/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 86 Notice of Appeal. (tp) (Entered: 06/15/2022) |
| 06/15/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 86 Notice of Appeal filed by Elon Musk were transmitted to the U.S. Court of Appeals. (tp) (Entered: 06/15/2022) |