# 22-1291-cv

## United States Court of Appeals
### *for the*
### Second Circuit

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

– v. –

ELON MUSK,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

WILLIAM A. BURCK
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000

ALEX SPIRO
ELLYDE R. THOMPSON
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ........................................................................................... 3

I.    THE SEC FAILS TO REBUT THE UNCONSTITUTIONALITY
AND UNENFORCEABILITY OF THE PRE-APPROVAL
PROVISION ................................................................................... 3

    A.    The SEC Does Not Dispute The Pre-Approval Provision
Constitutes An Illegal Prior Restraint ..................................... 4

    B.    The SEC Does Not Explain How Mr. Musk Could Have
Validly Waived Indeterminate Future Rights ......................... 8

    C.    Even If Mr. Musk Waived His Rights, That Waiver Is
Unenforceable ...................................................................... 12

        1.    The Pre-Approval Provision Runs Afoul Of The
Unconstitutional Conditions Doctrine ...................... 13

        2.    The Public Interest Does Not Support The Violation Of
Mr. Musk's Constitutional Rights ............................ 17

        3.    Mr. Musk Did Not Waive This Argument Below And
His Claim Is Ripe ...................................................... 20

II.    THE SEC FAILS TO DISPEL THE CHANGED CIRCUMSTANCES
IT HAS CAUSED AND THAT EQUITABLE RELIEF IS
WARRANTED ................................................................................ 22

    A.    The SEC's Contradictory Arguments Do Not Undermine Mr.
Musk's Showing Of Changed Circumstances ..................... 23

    B.    The SEC Does Not Refute That The Purpose Of The Pre-
Approval Provision Has Been Achieved.............................. 24

    C.    The SEC Disregards The Public Interest In Avoiding
Constitutional Harms.......................................................... 25

CONCLUSION ..................................................................................................28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009) .................................................................. 9

*Aebisher v. Ryan*,
    622 F.2d 651 (2d Cir. 1980) ..................................................... 22

*Aetna Ins. Co. v. Kennedy*,
    301 U.S. 389 (1937) .................................................................. 8

*Allianz Insurance Co. v. Lerner*,
    416 F.3d 109 (2d Cir. 2005) ..................................................... 12

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) .................................................................. 9

*Brewer v. Williams*,
    430 U.S. 387 (1977) .................................................................. 9

*Carlin Comms., Inc. v. Mountain States Tel. and Tel. Co.*,
    827 F.2d 1291 (1987) ................................................................ 7

*Carnley v. Cochran*,
    369 U.S. 506 (1962) .................................................................. 10

*Charlery v. City of New York Dep't of Educ.*,
    737 F. App'x 54 (2d Cir. 2018) ................................................ 10

*Citigroup Global Mkts., Inc.* (*Citigroup II*),
    752 F.3d 285 (2d Cir. 2014) ..................................................... 14

*Crosby v. Bradstreet Co.*,
    312 F.2d 483 (2d Cir. 1963) ..................................................... 20

*Davies v. Grossmont Union High Sch. Dist.*,
    930 F.2d 1390 (9th Cir. 1991) ..................................... 9, 11, 13, 15

*Dickey v. Fla.*,
    398 U.S. 30 (1970) .................................................................... 10

*Emmert Indus. Corp. v. City of Milwaukie, Or.*,
    307 F. App'x 65 (9th Cir. 2009) ............................................... 13

*Hurd v. Hodge*,
    334 U.S. 24 (1948) .................................................................... 19

iii

*In re George F. Nord Bldg. Corp.*,
    129 F.2d 173 (7th Cir. 1942) ........................................................11

*Johnson v. Zerbst*,
    304 U.S. 458 (1938)..................................................................8, 9

*Knife Rights, Inc. v. Vance*,
    802 F.3d 377 (2d Cir. 2015) ........................................................21

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013)......................................................................2

*Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*,
    772 F.3d 1352 (11th Cir. 2014) ....................................................15

*Lee v. Habib*,
    424 F.2d 891 (D.C. Cir. 1970)......................................................19

*Lil' Man In The Boat, Inc. v. City & Cty. of San Francisco*,
    No. 17-CV-00904-JST, 2017 WL 3129913 (N.D. Cal. July 24, 2017) ........14

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
    921 F.2d 1371 (8th Cir. 1990) ......................................................19

*Louisiana Pac. Corp. v. Beazer Materials & Servs.*,
    842 F. Supp. 1243 (E.D. Cal. 1994) ..............................................14

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Empls. & Rest. Empls. Int'l Union*,
    239 F.3d 172 (2d. Cir. 2001) .............................................. 5, 6, 24

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)......................................................................5

*New York Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) ........................................................17

*Ohio Bell Tel. v. Public Utilities Comm'n*,
    301 U.S. 292 (1937)......................................................................8

*Overbey v. Mayor of Balt.*,
    930 F.3d 219 (4th Cir. 2019) ........................................................13

*Peterson v. City of Greenville*,
    373 U.S. 244 (1963)......................................................................7

*Picard v. Magliano*,
    42 F.4th 89 (2d Cir. 2022) ..........................................................21

*Playtex Prod., Inc. v. Procter & Gamble Co.*,
    No. 02 CIV.8046(WHP), 2008 WL 399295 (S.D.N.Y. Feb. 11, 2008)........26

*Price v. U.S. Dep't of Just. Att'y Off.*,
    865 F.3d 676 (D.C. Cir. 2017)......................................................18

*R.S.W.W., Inc. v. City of Keego Harbor*,
　397 F.3d 427 (6th Cir. 2005) ........................................................13

*Reed v. Town of Gilbert*,
　576 U.S. 155 (2015) .........................................................................4

*Rufo v. Inmates of Suffolk Cnty. Jail*,
　502 U.S. 367 (1992) .......................................................................26

*Sajous v. Decker*,
　No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018).......17

*SEC v. Moraes*,
　No. 22-CV-8343 (RA), 2022 WL 15774011 (S.D.N.Y. Oct. 28, 2022)... 2, 7, 14, 24, 27

*SEC v. Novinger*,
　40 F.4th 297 (5th Cir. 2022) ....................................................7, 24

*SEC v. Romeril*,
　15 F.4th 166 (2d Cir. 2021) .......................................... 7, 10, 15, 16

*Stamford Bd. of Educ. v. Stamford Educ. Ass'n*,
　697 F.2d 70 (2d Cir. 1982) ...........................................................19

*Stephens v. County of Albemarle*,
　No. 3:04CV00081, 2005 WL 3533428 (W.D.Va. Dec. 22, 2005)...............13

*Town of Newton v. Rumery*,
　480 U.S. 386 (1987).................................................................8, 15

*United States v. Brennan*,
　650 F.3d 65 (2d Cir. 2011) ...........................................................12

*United States v. City of Miami*,
　664 F.2d 435 (5th Cir. 1981) ........................................................19

*United States v. IBT*,
　3 F.3d 634 (2d Cir. 1993) ...............................................................6

*United States v. Jackson*,
　301 F.3d 59 (2d Cir. 2002) ...........................................................12

*United States v. Josefik*,
　753 F.2d 585 (7th Cir. 1985) ........................................................19

*United States v. Quattrone*,
　402 F.3d 304 (2d Cir. 2005) ...........................................................5

*United States v. Restrepo*,
　986 F.2d 1462 (2d Cir. 1993) ........................................................16

*Vt. Right to Life Comm. v. Sorrell*,
　221 F.3d 376 (2d Cir. 2000) .........................................................21

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ........................................................21

*Zieper v. Metzinger*,
    474 F.3d 60 (2d Cir. 2007) ................................................... 21, 23

## PRELIMINARY STATEMENT

While the SEC criticizes Appellant Elon Musk's First Amendment-based arguments as "hyperbole," the SEC apparently agrees that the pre-approval provision is an unconstitutional prior restraint. Nowhere does it argue otherwise. Instead, telegraphing its lack of concern for the constitutional rights of defendants, the SEC contends that this Court need not address the constitutional infirmities in the judgment and amended judgment, either because Mr. Musk waived such rights or because the unconstitutional conditions doctrine does not apply. Such arguments come as no surprise given the SEC's long history of mandating constitutionally suspect concessions in settlements, but they are unpersuasive and this Court should reject them.

As to the unconstitutionality of the pre-approval provision, the SEC suggests that Mr. Musk waived his arguments challenging the constitutional defects of the pre-approval provision. Yet the SEC ignores black-letter law that, to be valid, a waiver of constitutional rights must be knowing and voluntary—an impossibility in the context of the waiver of future and unknowable rights. But even if knowing and voluntary, the SEC fails to rebut Mr. Musk's showing that the waiver is unenforceable. As a district court in this Circuit recently explained in assessing the SEC's repeated insistence that settlements be conditioned on the waiver of First Amendment rights, "the fact that defendants may waive their First Amendment

1

rights does not mean that the government should be in the business of demanding that they do so" because doing so is "at least in tension with the unconstitutional conditions doctrine." *SEC v. Moraes*, No. 22-CV-8343 (RA), 2022 WL 15774011, at *3–4 (S.D.N.Y. Oct. 28, 2022). While the SEC argues that it is entitled to condition a settlement offer on a defendant waiving the future invocation of constitutional rights, it ignores that the intent of the doctrine is to "'vindicate[] the Constitution's enumerated rights by preventing the government' from wielding its authority to manipulate incentives to 'coerc[e] people into giving them up.'" *Id.* at *3 (quoting *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013)). The application of the doctrine here dictates that the pre-approval provision— extracted as a condition of settling the initial SEC action and then the contempt motion—should be excised from the consent decree. Indeed, because the SEC does not dispute that the pre-approval provision constitutes a prior restraint that fails to satisfy strict scrutiny, the SEC cannot combat the heavy presumption against the validity of the provision, which provides an independent justification for modification of the consent decree as against public policy.

Separately, while the SEC devotes substantial space to rebutting the presence of changed circumstances warranting modification of the judgment, the SEC neglects to address the full scope of its efforts to wield the consent decree to harass Mr. Musk—starting with its effort to hold Mr. Musk in contempt and continuing to

2

this day.  The SEC asserts that its goal in imposing the pre-approval provision was to prevent after-the-fact investigative and enforcement action as to Mr. Musk's statements, yet it has nonetheless engaged in relentless investigations.  The SEC's arguments thus underscore that its extensive investigative action was not anticipated, supporting Mr. Musk's argument that these changed circumstances warrant modification.  For this same reason, the SEC fails to rebut that the purpose of the pre-approval provision has been achieved.  And the SEC has no answer as to how requiring a court to enforce a violation of constitutional rights can possibly serve the public interest.

The Court should strike the pre-approval provision from the judgment and amended judgment and, in doing so, provide a meaningful reminder to the SEC that it must respect constitutional rights.

## ARGUMENT

### I.  THE SEC FAILS TO REBUT THE UNCONSTITUTIONALITY AND UNENFORCEABILITY OF THE PRE-APPROVAL PROVISION

Because the SEC nowhere contests that the pre-approval provision violates the First Amendment or that courts lack the power to enforce settlements that violate the Constitution, this Court need only address whether Mr. Musk knowingly and voluntarily waived his First Amendment rights and, if so, whether any waiver is enforceable.  As to waiver, the SEC has failed to carry its burden to show a knowing and voluntary waiver or that Mr. Musk forfeited any ability to raise this argument.

3

As to enforceability, the SEC's arguments that this Court should decline to apply the unconstitutional conditions doctrine to SEC settlements at all or apply only a watered-down version of it should be rejected. The doctrine serves as a necessary check on the SEC's power and the prior restraint here constitutes an unconstitutional condition of settlement. Independently, the pre-approval provision cannot be enforced because the court should not be in the position of monitoring speech—as the pre-approval provision requires here.

### A. The SEC Does Not Dispute The Pre-Approval Provision Constitutes An Illegal Prior Restraint

The SEC does not dispute that, as Mr. Musk demonstrated (at 20–29), the pre-approval provision is an improper content-based restriction on speech.

Because the pre-approval provision "target[s] speech based on its communicative content," it is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Mr. Musk's written communications relating to Tesla are protected First Amendment speech. A274; Opp. 47. The SEC admits that the pre-approval provision has "no bearing on communications about non-Tesla matters," Opp. 2, 11, 14, reinforcing the provision's content-based nature. The Commission does not contest that this standard applies or make any effort to show narrow tailoring or a compelling government interest.

4

Likewise, the SEC does not contest that the pre-approval provision constitutes a prior restraint on Mr. Musk's speech, "the most serious and the least tolerable infringement on First Amendment Rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Instead, the SEC argues only (at 34) that Mr. Musk waived such rights or failed to contest that such waiver was invalid. The SEC claims (at 35–36) based on factual (but not legal) distinctions that there is "no legitimate comparison" between Mr. Musk's consent decree and the court-issued orders barring speech in *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172 (2d. Cir. 2001), *Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976), or *United States v. Quattrone*, 402 F.3d 304 (2d Cir. 2005). But whether or not these cases concerned consent decrees, the pertinent fact is the same: they concerned government orders that must "be obeyed until modified or dissolved, and [their] unconstitutionality is no defense to disobedience." *Metro. Opera*, 239 F.3d at 176. As this Court in *Metropolitan Opera* explained, because the injunction there threatened contempt sanctions for speech that ultimately may have been found to be constitutionally protected, the restraint could "freeze" the party's protected speech. *Id.*; *see also Neb. Press Ass'n*, 427 U.S. at 559 (a prior restraint "'freezes' speech, at least for the time"); *Quattrone*, 402 F.3d at 310 ("A prior restraint is not constitutionally inoffensive merely because it is temporary."). This is the same threat the pre-approval provision embodies, which,

5

as the SEC concedes (at 46–47) serves to "pause" Mr. Musk before he publishes any information about Tesla.

The SEC discounts (at 20) Mr. Musk's legitimate concerns about government-mandated monitoring and chilling of speech as "hyperbole," but does not answer to the fact that the consent decree mandates pre-approval of Mr. Musk's speech, a clear and impermissible prior restraint.[1]  While the SEC repeats its observation (at 2, 20, 27, 36, 47) that the pre-approval provision tasks a Tesla employee with pre-approving Mr. Musk's tweet, the SEC cannot dispute that the provision, part of an SEC-mandated and court-enforced consent decree, constitutes state action, as Mr. Musk demonstrated.  Br. 20, 22–25.  This Court has specifically determined that court-appointed lay persons can engage in state action when the individuals, even those who are in other contexts not state actors, were carrying out certain duties pursuant to a consent decree.  *See, e.g.*, *United States v. IBT*, 3 F.3d 634, 639 (2d Cir. 1993) (through the consent decree, "[t]he district court endowed the [individuals] with 'powers or functions governmental in nature'").  In this same vein,

---

[1]  Here, the Commission defends its attempt to punish Mr. Musk for criticizing the SEC in the *60 Minutes* interview by saying it "raised questions" about his "diligen[ce]."  Opp. 29.  But this defense only highlights the concern that the SEC does not like it when Mr. Musk uses his speech against the agency and is willing to use its prosecutorial power against him when he does, just as in *Metropolitan Opera*, in which this Court expressed concerns that the prior restraint would inhibit legitimate criticism of the Metropolitan Opera.  239 F.3d at 176.

private actors' conduct constitutes state action when carried out under the threat of prosecution by the government. *See Carlin Comms., Inc. v. Mountain States Tel. and Tel. Co.*, 827 F.2d 1291, 1295 (1987) (threat to prosecute caused "the state [to] so involve[] itself that it could not claim the conduct had actually occurred as a result of private choice" and "converted [] otherwise private conduct into state action").[2]

Since Mr. Musk filed his opening brief, a district court in this Circuit has weighed in on this issue and concluded that the SEC's gag order provisions—requirements with a far narrower scope than the pre-approval provision at issue here—have "all the hallmarks of a prior restraint on speech," *Moraes*, 2022 WL 15774011, at *4. *See also SEC v. Novinger*, 40 F.4th 297, 308 (5th Cir. 2022) (Jones, J., concurring) ("[a] more effective prior restraint is hard to imagine"). The SEC has not made—and thus waived—any argument that the pre-approval provision here does not constitute an unconstitutional prior restraint.

---

[2] For this reason, the SEC's argument (at 36) that there is "no legitimate comparison" between the pre-approval provision and "situations where officials play a role in approving speech" fails. Any argument that Tesla attorneys have an independent obligation to monitor Mr. Musk's speech about the company does not negate the fact that, in this context, their specific conduct pursuant to the pre-approval provision is state action. *See Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963) (state action existed even when evidence indicated a private actor "would have acted as he did independently" of the government regulation that required him to act). And the state action is even more pronounced here than in *SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021), because a violation of an SEC gag order only allows the SEC to move to withdraw the settlement and proceed against the defendant, whereas a violation of the pre-approval provision at issue here is punishable by contempt.

**B.    The SEC Does Not Explain How Mr. Musk Could Have Validly Waived Indeterminate Future Rights**

The SEC's overly simplistic argument that, because Mr. Musk agreed to the consent decree, he knowingly and voluntarily waived his First Amendment rights fails to account for the fact that waivers of constitutional rights are disfavored, that such waivers must be assessed on a case-by-case basis, and that the waiver of indeterminate future rights cannot be made "knowingly."

*First*, the SEC is wrong to suggest (at 34) that acquiescence to the consent decree establishes a valid waiver of constitutional rights.  To the contrary, where constitutional rights are concerned, courts have long-recognized that they "indulge every reasonable presumption against [a defendant's] waiver." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks omitted); *see also Ohio Bell Tel. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937) ("[W]e do not presume acquiescence in the loss of fundamental rights."); *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) ("[C]ourts indulge every reasonable presumption against waiver [of fundamental rights].").  No *per se* rule applies, as the Supreme Court explained in *Town of Newton v. Rumery*, 480 U.S. 386 (1987), reasoning that, "in *some* cases these agreements *may* infringe important interests of the [] defendant and of society as a whole." *Id.* at 392 (emphasis added).  While the Supreme Court determined Rumery had waived his statutory right to file a Section 1983 lawsuit in settling a criminal suit, the court made clear that waivers must be analyzed on a case-

8

by-case basis. *Id.* That parties may, under certain narrow circumstances, waive constitutional rights, says nothing about whether Mr. Musk knowingly and voluntarily did so in this instance. *Rumery* provides at most, a floor to the analysis of the waiver of statutory rights. Indeed, other statutory rights are not subject to waiver. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009) ("[F]ederal antidiscrimination rights may not be prospectively waived."); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (an arbitration agreement that waives a party's "right to pursue [federal] statutory remedies" is unenforceable). Acquiescence to the consent decree does not establish waiver.[3]

*Second*, the SEC bears the burden of establishing Mr. Musk's knowing and voluntary waiver and has failed to meet that bar. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977) ("[I]t [is] incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.'") (quoting *Johnson*, 304 U.S. at 464, and collecting cases). As Mr. Musk demonstrated (at 31–34), he did not knowingly and voluntarily waive his future rights to speak freely about Tesla. Other than pointing to the fact that Mr. Musk signed the consent decree, the SEC

---

[3]  Indeed, because this case concerns constitutional—instead of statutory rights—the SEC's bar for establishing waiver is even higher. *See Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1397 (9th Cir. 1991) ("[B]ecause constitutional rights are generally more fundamental than statutory rights, a stricter rule than the one embodied by the *Rumery* balancing test may be appropriate in cases [involving constitutional rights].").

asserts only (at 42) that Mr. Musk's lack of counsel "reinforces the knowing and voluntary nature of his waiver." But absent from the SEC's argument is any explanation or legal support for how Mr. Musk—a non-attorney—could assess the scope of the constitutional rights at issue. Instead, the SEC has it backwards: it is the *existence* of counsel—not the absence of counsel—that weighs in favor of finding of knowing and voluntary release. *See Charlery v. City of New York Dep't of Educ.*, 737 F. App'x 54, 54–55 (2d Cir. 2018). The SEC's reference (at 42) to the fact that Tesla had counsel, gives no insight into Mr. Musk's ability to knowingly waive his rights and "[p]resuming waiver from a silent record is impermissible." *Carnley v. Cochran*, 369 U.S. 506, 516 (1962); *Dickey v. Fla.*, 398 U.S. 30, 49 (1970) (Brennan, J., concurring) ("[T]he equation of silence or inaction, with waiver is a fiction that has been categorically rejected by this Court when other fundamental rights are at stake.").

While the SEC argues (at 39–40) that "Musk has not pointed to any term of the pre-approval provision that he claims he did not understand," Mr. Musk explained (at 31, 34) that he could not know the scope of future speech restrained by the pre-approval provision. That distinguishes the circumstances here from the cases on which the SEC relies (at 38–41), which involved a specific set of facts already defined. *See, e.g.*, *Romeril*, 15 F.4th at 170 (addressing no-admit, no-deny provision specific to underlying allegations).

10

Nor does the SEC's reliance on *Davies*, 930 F.2d at 1395, to argue "it is *possible* to knowingly waive a general right without contemplating the specific circumstances under which that waiver will be enforced," Opp. 40 (emphasis added), dictate the result here. In that case, the consent judgment provided the defendant would "never seek or accept any office . . . with the [defendant school district] in any capacity," which the court determined sufficient to define to the scope of the waiver. *Id*. at 1394–95.[4]

*Finally*, while the SEC argues (at 39) that Mr. Musk forfeited the ability to challenge his waiver as not knowing or voluntary, the SEC disregards that the district court actually addressed Mr. Musk's waiver, A275, and determined that Mr. Musk had knowingly and willingly entered the consent decree, A278–79. Mr. Musk specifically addressed the circumstances surrounding the consent decree, the pressure to sign it, the inequitable nature of the consent decree below, and the fact that the pre-approval provision covers a "broad swath of speech subject to pre-approval." Musk Reply in Further Support of Mot. to Quash & to Terminate Consent Decree ("Musk Reply"), *SEC v. Musk*, 1:18-cv-8865-LJL (S.D.N.Y.), ECF 80 at 8.

---

[4] *In re George F. Nord Bldg. Corp.*, 129 F.2d 173, 176 (7th Cir. 1942), on which the SEC relies (at 38) despite it predating *Rumery*, further confirms this point. The Seventh Circuit read the consent restriction narrowly, such that it only "referred to communications relating to the reorganization [at issue in the proceeding], not to irrelevant communications," and called a broader interpretation "ridiculous." *Id.*

11

In any event, neither of the cases on which the SEC relies (at 39) for its waiver argument indicates the presence of any such forfeiture. *See United States v. Brennan*, 650 F.3d 65, 137 (2d Cir. 2011) (forfeiture of argument not made in opening appellate brief); *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir. 2002) (harmlessness of erroneously admitted evidence). The SEC has not contended that there are any facts it would have adduced in the district court had Mr. Musk's arguments been framed differently because the SEC's argument is that signing the consent decree itself sufficient to establish waiver. And, even if not raised below, this Court has the discretion to consider this argument because the waiver doctrine is entirely prudential. *See Allianz Insurance Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (court may exercise its discretion "where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding"). In light of the important constitutional issues at stake and the lack of factual dispute, this Court should consider Mr. Musk's argument that his waiver was not knowing and voluntary.

## C. Even If Mr. Musk Waived His Rights, That Waiver Is Unenforceable

Independent of whether Mr. Musk's waiver was knowing and voluntary, the unconstitutional conditions doctrine and the public interest prohibit its enforcement. The SEC fails to refute Mr. Musk's showing that the unconstitutional conditions doctrine and public policy bar enforcement of the pre-approval provision.

12

### 1. The Pre-Approval Provision Runs Afoul Of The Unconstitutional Conditions Doctrine

Unable to refute Mr. Musk's showing (at 35–38) that the pre-approval provision violates the unconstitutional conditions doctrine, the SEC seeks to evade its constitutional obligations by arguing that the contours of the doctrine do not apply. Not so.

*First*, the SEC errs in arguing (at 50–51) that an agreement to settle is not a government benefit. Such an argument contradicts the large body of law holding that an agreement to settle can be a government benefit. *See, e.g.*, *Davies*, 930 F.2d at 1399 (requiring "a close nexus—a tight fit" between the government's interest and the right waived when the government "require[s] a citizen to surrender a constitutional right as part of a settlement or other contract"); *Overbey v. Mayor of Balt.*, 930 F.3d 215, 219, 222 (4th Cir. 2019) (invalidating waiver of First Amendment rights demanded by the city as a condition of settling a police brutality action); *Emmert Indus. Corp. v. City of Milwaukie, Or.*, 307 F. App'x 65, 67 (9th Cir. 2009) (unconstitutional conditions analysis of litigation waiver); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005) ("Under the unconstitutional conditions doctrine, a state actor cannot constitutionally condition the receipt of a benefit . . . on an agreement to refrain from exercising one's constitutional rights") (internal quotation marks omitted); *Stephens v. County of Albemarle*, No. 3:04CV00081, 2005 WL 3533428 (W.D.Va. Dec. 22, 2005)

(unconstitutional conditions doctrine must apply to settlement agreements because to hold otherwise "would vitiate the unconstitutional conditions doctrine"); *Lil' Man In The Boat, Inc. v. City & Cty. of San Francisco*, No. 17-CV-00904-JST, 2017 WL 3129913 at *9–10 (N.D. Cal. July 24, 2017) (applying unconstitutional conditions argument to waiver as a part of a contract to use government property); *Louisiana Pac. Corp. v. Beazer Materials & Servs.*, 842 F. Supp. 1243, 1254 (E.D. Cal. 1994) ("[T]he doctrine of unconstitutional conditions operates in a settlement context as a limitation upon the government's power to exact a waiver of constitutional rights."). Indeed, as a district court in this Circuit noted recently in *SEC v. Moraes*, a "growing chorus of circuits have concluded that the Constitution prevents courts from enforcing the waiver of First Amendment rights as a condition of settlements." 2022 WL 15774011, at *4 (collecting cases).

In fact, the SEC contradicts its own argument in this regard. The SEC maintains (at 50) that the settlement *did* confer a benefit of Mr. Musk. In arguing that government settlements do not benefit the defendant, the SEC relies on *SEC v. Citigroup Global Mkts., Inc.* (*Citigroup II*), 752 F.3d 285 (2d Cir. 2014). But that case acknowledges that both "parties" to an SEC consent decree benefit from it. *Id.* at 295. That the SEC "settled to benefit the public while minimizing risk and allocating finite resources," Opp. 51 (citing *Citigroup II*, 752 F.3d at 295–96), does not answer the question of whether an offer of settlement also provides a benefit to

14

the counterparty. Indeed, it plainly does, as the SEC confirms in citing to the list of benefits it asserts Mr. Musk received. Opp. 50 (citing, *inter alia*, avoiding the "risk of adverse outcome at trial" because the SEC agrees to no longer pursue the case and the time and expense of trial).

*Second*, the SEC is wrong to suggest that the "nexus" requirement is only required in unconstitutional conditions cases concerning property rights. *See Davies*, 930 F.2d at 1399 (requiring "a close nexus—a tight fit—between the specific interest the government seeks to advance in the dispute underlying the litigation involved and the specific right waived" "as part of a settlement or other contract"); *see also Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1365 (11th Cir. 2014) (requiring nexus and rough proportionality for unconstitutional conditions analysis of suspicionless searches required for government benefits). Beyond that, the SEC's assertion that the "[a]pplication of that rubric makes little sense" because "parties can waive their First Amendment rights in consent decrees," (at 52, quoting *Romeril*, 15 F.4th at 172), ignores that the nexus inquiry does not foreclose every condition implicating constitutional rights, but simply requires a close nexus to the benefit received. Br. 35. Neither *Rumery* nor *Romeril* support the idea that the nexus inquiry has no application here; in *Rumery*, criminal charges against Rumery and Rumery's civil suit against the prosecutor involved the same

incident, 480 U.S. at 390–91, 394, and in *Romeril* the gag rule concerned only the underlying conduct, 15 F.4th at 173.

The SEC addresses the application of the nexus inquiry to the pre-approval provision only in a footnote (at 52 n.8), and thus forfeits any argument that the pre-approval provision satisfies this requirement. *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."). In any event, it does not. The pre-approval provision restrains truthful, accurate, and immaterial speech that would never fall within the SEC's purview because it does not implicate the securities laws.

Here, the pre-approval provision waiver is not "tied to the tweets that prompted Commission action," Opp. 38, but instead encompasses broad swaths of information about Tesla, which clearly have no nexus to the circumstances underlying this litigation. If the argument that "he discussed X topic once, he might say something on Y topic in the future," *see* Opp. 52 n. 8, were sufficient to establish a nexus, the unconstitutional conditions doctrine would cease to protect First Amendment rights.

### 2.    The Public Interest Does Not Support The Violation Of Mr. Musk's Constitutional Rights

The SEC offers little in response to Mr. Musk's argument that the pre-approval provisions is so plainly contrary to the public interest that it should be stricken.

*First*, the SEC nowhere addresses the fact that it is never in the public interest for the government to violate a citizen's constitutional rights. *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018) ("The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld."). Instead, the SEC argues (at 47–48) that Mr. Musk is objecting to Tesla's executive communications policy. But the SEC's entire argument in favor of the pre-approval provision is that Mr. Musk's compliance with Tesla's communications policy must be subject to SEC and judicial oversight. The unconstitutional prior restraint of Mr. Musk's speech, subject to enforcement by the SEC with the full force of the district court's contempt powers, is what Mr. Musk argues violates public policy.[5]

---

[5]    The SEC is wrong to assert (at 48) that the prior restraint here does not prevent meaningful discourse. As Mr. Musk explained (at 22–23), the pre-approval provision both forces Mr. Musk to permanently relinquish his First Amendment right to speak freely on a range of topics without prior approval and therefore imposes an impermissible chilling effect by threatening Mr. Musk's speech with sanctions.

17

*Second*, the SEC also suggests—with no evidence—that the consent decree is presently in the interest of Tesla's shareholders.[6]  If this were true, then it would fall to Tesla's Board of Directors to make this determination.[7]  Regardless, the appropriate question is what is in the public interest, not the interest of Tesla shareholders.  The Constitution protects the rights of all Americans, not just those who can afford to invest in the stock market.

*Third*, it is insufficient for the SEC to counter Mr. Musk's constitutional interests with a general assertion of a public interest in enforcement of securities laws because the SEC maintains its ability to pursue enforcement actions regardless of the pre-approval provision.  Indeed, the public's access to information "provides an important vehicle for vindicating significant rights—and for keeping prosecutors honest."  *Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 682 (D.C. Cir. 2017) (FOIA waivers do not support legitimate prosecutorial interests).

*Fourth*, while acknowledging *Rumery* requires balancing, the SEC restates the importance of enforcing consent judgments while ignoring that "[a] court has a

---

[6]  The SEC cites to a purported "large number of shareholder suits," Opp. 47, but those suits are a byproduct of the SEC's action and so cannot provide justification for it.  In any event, the SEC does not explain why those suits render an unconstitutional prior restraint in the public interest.  If anything, they show the additional deterrent to speech that violates the securities laws.

[7]  That other companies may have a social media policy or a disclosure committee, Opp. 48, says nothing about whether the SEC may require Mr. Musk abide by the particular—and seemingly unique—procedures it has imposed on Tesla.

18

strong interest in not involving itself, along with the prestige of the law, in an ongoing equitable decree which is either manifestly unworkable or plainly unconstitutional." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (Rubin, J., concurring) (courts must ascertain that a consent decree "does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence"). This is so independent of whether a party consents to an agreement. *See United States v. Josefik*, 753 F.2d 585, 588 (7th Cir. 1985) (parties may not "stipulate[] to trial by 12 orangutans . . . because some minimum of civilized procedure is required by community feeling ***regardless of what the defendant wants or is willing to accept***.") (emphasis added).

Ultimately, "public policy circumscribes agreements between private parties in order to prevent the courts from becoming 'vehicles of discrimination.'" *Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 73 (2d Cir. 1982) (citing *Hurd v. Hodge*, 334 U.S. 24, 34–35 (1948) and quoting *Lee v. Habib*, 424 F.2d 891, 902 (D.C. Cir. 1970)). Whether Mr. Musk and the SEC at one time agreed to the pre-approval provision or not, this Court has a duty to ensure their agreement accords with the public interest—an interest that favors upholding constitutional rights.

### 3. Mr. Musk Did Not Waive This Argument Below And His Claim Is Ripe

Finally, in an effort to preclude this Court from addressing the serious constitutional defect of the consent decree, the SEC argues (at 43–45) both that Mr. Musk waived any argument as to unenforceability and that such argument is not ripe. Neither is correct.

As to waiver, Mr. Musk specifically argued below that courts lack the power to enforce agreements such as the pre-approval provision for the very reasons he now raises on appeal. To support this argument, Mr. Musk relied on *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir. 1963), in which this Court vacated a consent decree because courts do not have power to enforce settlements that violate the First Amendment. Musk Reply, ECF 80 at 9 (citing support that "the First Amendment is a critical constitutional limitation" on the judicial power). Mr. Musk encouraged the district court not to follow *Romeril*,[8] and explained that the pre-approval provision here constitutes an even more substantial constitutional violation than the gag rule. Mr. Musk also argued that the pre-approval provision is contrary to the public interest. Musk Mem. of Law in Support of Mot. to Quash & to Terminate

---

[8] Mr. Musk also cited to the then-pending petition for certiorari in *Romeril*, referring the district court to the cases it described "holding courts lack power to enforce prior restraints and content and viewpoint-based speech restrictions as settlement conditions, even when entered with consent." Musk Reply, ECF 80 at 8.

Consent Decree ("Musk Mem."), *SEC v. Musk*, 1:18-cv-8865-LJL (S.D.N.Y.), ECF 71 at 22 n.5. This argument is not waived.

As to ripeness, the SEC insinuates (at 43–45) Mr. Musk's claim is insufficiently developed since the SEC has not yet filed an enforcement action. But the SEC falls short of actually arguing that Mr. Musk lacks standing to seek modification or termination of the consent decree at this juncture. Such an argument would be unavailing. Whether or not the SEC files another action in court, Mr. Musk's rights are being violated every minute the decree persists. Courts have made clear that, "[a] plaintiff need not first expose himself to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced." *Picard v. Magliano*, 42 F.4th 89, 97–98 (2d Cir. 2022) (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015), and noting "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical"). This is particularly true in the First Amendment context, where complainants must show only "an actual and well-founded fear" of injury. *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000).

Government investigations can levy chill sufficient to establish a First Amendment violation prior to the filing of an enforcement action. *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000); *Zieper v. Metzinger*, 474 F.3d 60, 65–66 (2d Cir. 2007) ("[T]he First Amendment prohibits government officials from encouraging

the suppression of speech in a manner which can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request."); *Aebisher v. Ryan*, 622 F.2d 651, 655 (2d Cir. 1980) ("The exercise of First Amendment freedoms may be deterred almost as potently by the threat of sanctions as by their actual application."). That is exactly the effect of the pre-approval provision here. As a result, this Could should not only address the unenforceability of the pre-approval provision, but it should also hold it unenforceable.

## II. THE SEC FAILS TO DISPEL THE CHANGED CIRCUMSTANCES IT HAS CAUSED AND THAT EQUITABLE RELIEF IS WARRANTED

As Mr. Musk argued, the pre-approval provision should be excised from the consent decree pursuant to Federal Rule of Civil Procedure 60(b)(5). The SEC's quibbles about whether it has pursued investigations because of the consent decree or its general investigative authority only serve to confirm both the extent of the SEC's attention on Mr. Musk and that no purpose is served by maintaining the pre-approval provision, underscoring why the continued infringement of Mr. Musk's constitutional rights does not serve the public interest.

### A.  The SEC's Contradictory Arguments Do Not Undermine Mr. Musk's Showing Of Changed Circumstances

The SEC's quibbling over the extent of its investigations into Mr. Musk does little to rebut Mr. Musk's showing (at 45–52) that changed circumstances that have exacerbated the constitutional defect warrant modification.

At the threshold, the SEC's position that "[s]ettlements are not a get-out-of-future-inquiries card," Opp. 23, confirms the changed circumstances here.  The SEC has represented—here and below—that the intent of the pre-approval provision was "to have an *ex ante* process for the review of potentially market-moving information before it moves the market."  Opp. 32.  The SEC cannot argue that Mr. Musk should have anticipated the SEC would use the consent decree for additional scrutiny *ex post* while at the same time arguing that the "key purpose" was to avoid such after-the-fact investigations.

Beyond that, any dispute over the extent of the SEC's investigations, *see* Opp. 20, underscores that the SEC has evaded judicial scrutiny of the consent decree.  The SEC argues (at 20) that Mr. Musk may seek relief from the prior restraint only when it seeks to enforce the consent decree.  But the SEC says nothing about if or when it may do so, instead opting for a never-ending investigative campaign that violates Mr. Musk's freedom of speech through "the chilling effect of governmental action."  *Zieper*, 474 F.3d at 65–66.   In the past three years, the SEC has at all times kept at least one investigation open regarding Mr. Musk or Tesla.  Musk Mem., ECF

71 at 17–18. But the SEC ignores that its actions—in seeking contempt and in maintaining a steady stream of investigations—threatens to chill Mr. Musk's speech. As Mr. Musk explained, the SEC's actions aim to dissuade Mr. Musk from speaking at all. *See Metro. Opera Ass'n, Inc.*, 239 F.3d at 172–79 (vacating injunction that "risks contempt sanctions for speech that may ultimately, after full appellate review, be found constitutionally protected"). Mr. Musk should not have to "[h]old [his] tongue" and refrain from making truthful statements to avoid the risk of unending "litigati[on] with the SEC." *Moraes*, 2022 WL 15774011, at *2 (quoting *Novinger*, 40 F.4th at 308 (Jones, J., concurring)).

### B. The SEC Does Not Refute That The Purpose Of The Pre-Approval Provision Has Been Achieved

Nor has the SEC rebutted Mr. Musk's argument (at 52–53) that the purpose of the pre-approval provision has been achieved. While the SEC relies (at 32) on the need for pre-publication review, it neglects to show why it requires a prior restraint in a consent decree when Tesla has procedures in place that govern the oversight of executive communications and apply to Mr. Musk, *see* Br. 52. The only justification that the SEC provides for why the purpose of the pre-approval provision has not been achieved is that the SEC wants to be the one to enforce Mr. Musk's compliance with those procedures "rather than relying on Tesla to enforce them against its CEO and a significant shareholder." Opp. 32. Not only does this argument underscore that the pre-approval is an impermissible prior restraint, but

24

the purpose of the consent decree was to resolve the litigation brought by the SEC in 2018 and to prevent securities law violations, not to give the SEC or anyone else a veto on Mr. Musk's speech.

Beyond that, the question is not—as the SEC posits (at 32)—whether there has been the "mere passage of time and temporary compliance," but rather whether any lawful purpose would be served by the using the powers of the courts to police Mr. Musk's constitutionally protected future speech. The SEC cannot show the infringement on Mr. Musk's First Amendment rights continues to serve any lawful purpose in light of the SEC's investigatory authority, the injunction entered prohibiting Mr. Musk from violating Section 10(b), and Tesla's procedures on executive communications. Br. 52–53.[9]

## C. The SEC Disregards The Public Interest In Avoiding Constitutional Harms

The SEC also lacks any persuasive argument that consent decree's unconstitutional prior restraint serves the public interest, which provides a separate basis for modification.

---

[9] While the SEC attempts (at 33) to distinguish the cases on which Mr. Musk relied as involving different facts, the SEC does not provide any reason why the same legal principle would not apply. And, even as to the specific facts, the SEC's argument (at 33) that the consent decree "implements a procedure" merely refers to Tesla's communications procedure, and fails to justify the need for continuing SEC and judicial oversight.

As an initial matter, the SEC errs in suggesting (at 31) that Mr. Musk failed to raise his public interest argument below. Mr. Musk explicitly raised this argument, referring to his status as a public figure whose speech people want to hear and with whom they want to engage. Musk Mem., ECF 71 at 22 n.5 (citing article by Time Magazine naming Mr. Musk "Person of the Year" and quoting a source that, "He's probably the most viral social influencer ever."). As Mr. Musk argued, "[g]overnment attempts to shut down individuals' speech are always wrong, but attempts to limit the speech of public figures such as Mr. Musk are also undoubtedly *detrimental to the public interest*." *Id.* (citing *Rufo*, 502 U.S. 367, 383 n.7 (1992)) (emphasis added).

On the merits, contrary to the SEC's contention (at 31), changed circumstances are not "a predicate for granting a Rule 60(b)(5) motion." While "[i]t is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief can show a significant change [] in [] law," "modification . . . *is also appropriate* when its enforcement without modification would be detrimental to the public interest." *Playtex Prod., Inc. v. Procter & Gamble Co*., No. 02 CIV.8046(WHP), 2008 WL 399295, at *5 (S.D.N.Y. Feb. 11, 2008) (emphasis added) (internal quotations and citations omitted). Therefore, changed circumstances are not a necessary precursor to modification—they are a separate and independent justification from public interest.

As recently explained by Judge Abrams for the Southern District of New York, the SEC's imposition of prior restraints are uniquely contrary to the public interest. While gag orders "might be defensible if all that were involved was a private dispute between private parties, here the [gag order] is used by an agency of the federal government to shield itself from the public view." *Moraes*, 2022 WL 15774011, at *4 (internal quotations omitted). While in the *Moraes* case the gag order "creat[ed] the impression that the Commission sanctioned [the defendant] without basis," *id.*, here the SEC understands the pre-approval provision as license to ceaselessly investigate Mr. Musk without court supervision and out of the public view. Shielding the public and the judiciary is simply not in the public interest.

The SEC neglects to address these concerns, instead only stating (at 48) that the "consent judgment does nothing to prevent the publication of facts which the community has a right to know" because Mr. Musk can tweet—as long as he complies with the consent's gatekeeping. But such an argument requires as a necessary predicate that the SEC refute the fact that the pre-approval provision is an unconstitutional prior restraint—which it has not done.

"Courts are called upon to turn a blind eye to First Amendment rights being used as a bargaining chip; to endorse consent decrees, giving No-Admit-No-Deny Provisions the imprimatur of judicial sanction; and to enforce them should defendants ever step out of line. This is troubling indeed." *Moraes*, 2022 WL

27

15774011, at *1. This Court should uphold the public's interest in vindicating constitutional rights, and excise the pre-approval provision from the consent decree.

## CONCLUSION

This Court should vacate the district court's order, hold that the pre-approval provision contained in the amended judgment is an impermissible and unenforceable violation of the First Amendment, and remand with instructions to strike the pre-approval provision from the judgment and amended judgment.

DATED:  January 12, 2023        Respectfully submitted,

                                       QUINN EMANUEL URQUHART &
                                       SULLIVAN LLP

By *_/s/ Alex Spiro_*

| | |
|---|---|
| William A. Burck | Alex Spiro |
| Rachel G. Frank | Ellyde R. Thompson |
| QUINN EMANUEL URQUHART & | QUINN EMANUEL |
| SULLIVAN, LLP | URQUHART & SULLIVAN, LLP |
| 1300 I Street NW, 9th Floor | 51 Madison Avenue, 22nd Floor |
| Washington, D.C. 20005 | New York, NY 10010 |
| (202) 538-8000 | Telephone: (212) 849-7000 |

                                    *Counsel for Elon Musk*

29

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 32(a)(5) and 32(g)(1) and Local Rule 32.1(a)(4), I certify that the foregoing brief is proportionately spaced using 14-point Times New Roman font and contains 6,808 words, excluding the parts exempted from length limits by Federal Rule 32(f).

DATED: January 12, 2023

*/s/ Alex Spiro*
Alex Spiro

## CERTIFICATE OF SERVICE

I hereby certify that, on January 12, 2023, I electronically filed the foregoing response with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Alex Spiro*
Alex Spiro