# 22-1291-cv

# United States Court of Appeals
## *for the*
# Second Circuit

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

— v. —

ELON MUSK,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PETITION FOR PANEL REHEARING
## AND REHEARING *EN BANC*

WILLIAM A. BURCK
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC 20005
(202) 538-8000

ALEX SPIRO
ELLYDE R. THOMPSON
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES.................................................................. ii

INTRODUCTION & RULE 35(B) STATEMENT .................................1

FACTUAL STATEMENT ....................................................................4

ARGUMENT ........................................................................................7

I.      THE PANEL OVERLOOKED THAT MR. MUSK DID NOT
        FORFEIT HIS UNENFORCEABILITY ARGUMENT.................................7

II.     REHEARING OR REHEARING *EN BANC* IS WARRANTED TO
        ADDRESS MR. MUSK'S ARGUMENT THAT THE PRE-
        APPROVAL PROVISION IS AN UNCONSTITUTIONAL
        CONDITION ..............................................................................11

        A.      The Panel Decision Cannot Be Reconciled With Supreme Court
                Precedent ............................................................................11

        B.      Whether The SEC May Extract Constitutionally Infirm
                Concessions In Settlements Is One Of Exceptional Importance ........14

CONCLUSION....................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  568 U.S. 1113 (2013) .............................................................................................14

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  570 U.S. 205 (2013) ................................................................................. 3, 12, 13

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  651 F.3d 218 (2d Cir. 2011) ..................................................................................14

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  678 F.3d 127 (2d Cir. 2011) ..................................................................................14

*Baker v. Dorfman*,
  239 F.3d 415 (2d Cir. 2000) ..................................................................................10

*Booking v. Gen. Star Mgmt. Co.*,
  254 F.3d 414 (2d Cir. 2001) ..................................................................................10

*Brown v. Plata*,
  563 U.S. 493 (2011) ...............................................................................................9

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018) ..................................................................................10

*Crosby v. Bradstreet Co.*,
  312 F.2d 483 (2d Cir. 1963) ....................................................................................8

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F.2d 1390 (9th Cir. 1991) ...............................................................................12

*F.C.C. v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984) ...............................................................................................12

*Frew v. Hawkins*,
  540 U.S. 431 (2004) .................................................................................................9

*La. Pac. Corp. v. Beazer Materials & Servs.*,
  842 F. Supp. 1243 (E.D. Cal. 1994) .......................................................................12

*Legal Servs. Corp. v. Velazquez*,
   531 U.S. 533 (2001) ..................................................................11

*Lil' Man In The Boat, Inc. v. City & Cnty. of S. F.*,
   2017 WL 3129913 (N.D. Cal. July 24, 2017)...............................12

*O'Hare Truck Serv., Inc. v. City of Northlake*,
   518 U.S. 712 (1996) ..................................................................11

*Overbey v. Mayor of Balt.*,
   930 F.3d 215 (4th Cir. 2019).....................................................9, 12

*Perry v. Sindermann*,
   408 U.S. 593 (1972)...................................................................15

*Rufo v. Inmates of the Suffolk Cnty. Jail*,
   502 U.S. 367 (1992) .....................................................................7

*Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*,
   547 U.S. 47 (2006) ....................................................................12

*SEC v. Moraes*,
   2022 WL 15774011 (S.D.N.Y. Oct. 28, 2022)................. 1, 12, 15, 16

*SEC v. Romeril*,
   15 F.4th 166 (2d Cir. 2021)........................... 1, 2, 5, 8, 13, 15

*Speiser v. Randall*,
   357 U.S. 513 (1958) ..................................................................15

*Stephens v. County of Albemarle*,
   2005 WL 3533428 (W.D. Va. Dec. 22, 2005)................................12

*United States v. Quattrone*,
   402 F.3d 304 (2d Cir. 2005)..........................................................7

*United States v. Witco Corp.*,
   76 F. Supp. 2d 519 (D. Del. 1999)................................................9

*Ware v. L-3 Vertex Aerospace, LLC*,
   833 F. App'x 357 (2d Cir. 2020) .................................................10

**Rules and Regulations**

Fed. R. App. P. 32(a)(5) ................................................................17

Fed. R. App. P. 32(a)(6) ................................................................17

Fed. R. App. P. 32(f) ................................................................17

Fed. R. App. P. 35(b) ................................................................11

Fed. R. App. P. 40(a)(2) ................................................... 7, 15, 17

Fed. R. App. P. 40(b)(1) ................................................................17

**Additional Authorities**

47 Am. Jur. 2d Judgments § 653 ................................................................9

Luis A. Aguilar, Commissioner, U.S. Sec. & Exch. Comm'n., *Remarks Before the 20th Annual Securities and regulatory Enforcement Seminar* (Oct. 25, 2013) ................................................................15

## INTRODUCTION & RULE 35(B) STATEMENT

This case presents a question of exceptional importance—whether the Constitution imposes *any limit* on the SEC's ability to require that defendants waive constitutional rights as a condition of settling a securities fraud action. The SEC has told this Court it does not. SEC Br. 50-51 (arguing unconstitutional conditions doctrine is "inapplicable" to SEC settlements). Litigants have asked this Court to decide this question, but this Court has avoided addressing it. As a district court in this Circuit noted recently, when the SEC demands the waiver of First Amendment rights as part of a settlement, "the federal judiciary is made complicit in this practice" as "[c]ourts are called upon to turn a blind eye to First Amendment rights being used as a bargaining chip; to endorse consent decrees, giving [the provisions] the imprimatur of judicial sanction; and to enforce them should defendants ever step out of line. This is troubling indeed." *SEC v. Moraes*, 2022 WL 15774011, at *1 (S.D.N.Y. Oct. 28, 2022). Rehearing, or in the alternative, rehearing *en banc* is warranted to address this important question.

Two years ago, the Court declined to address the enforceability of the SEC's gag rule, which requires any defendant settling with the SEC to waive certain First Amendment rights, in *SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021). Here, the panel (Livingston, C.J., Kahn, J., Raggi, J.) deemed forfeited Appellant Elon Musk's argument regarding the unenforceability of the much broader prior restraint the SEC

demanded of him. The panel opted not to address the argument even though the SEC previously sought to hold Mr. Musk in contempt for failing to comply with the pre-approval provision and continues to police Mr. Musk's compliance with it, chilling Mr. Musk's speech.

In doing so, the panel overlooked that the briefing below specifically addressed the unenforceability of any waiver of First Amendment rights, that the question is purely one of law, and that the continuing nature of the consent decree means that this issue may be raised again—as even the SEC admits (SEC Br. at 43). Indeed, the district court neglected to rule on the argument only because this Court in *Romeril* also failed to address whether the SEC's extraction of the waiver of First Amendment rights as a condition of settlement could be enforced. A275 & n.6 (declining to consider enforceability based on *Romeril* but noting Mr. Musk referred to the pending *certiorari* petition). Panel rehearing is warranted so that the panel can address the substance of Mr. Musk's argument.

The decision also warrants review by the full Court, however, because it presents an issue of exceptional importance and because it conflicts with Supreme Court authority. Although the panel did not address the enforceability of the waiver of First Amendment rights, the decision nonetheless posits that Mr. Musk either had to forego a settlement with the SEC or give up his right to challenge the constitutionality of the SEC's demands. Supreme Court law holds otherwise.

The Supreme Court has held that "the Government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit.'" *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 570 U.S. 205, 214 (2013) (citation omitted). Yet the SEC here conditioned the settlement of the underlying action on Mr. Musk's agreement to a provision requiring pre-approval of statements on a range of topics, subject to SEC oversight and the court's contempt powers, with no expiration date. This prior restraint on Mr. Musk's speech extends beyond the statements that the SEC had alleged in the settled 2018 action violated the securities laws (statements that a nine-member jury unanimously determined did not violate Section 10(b) of the Exchange Act, *see* ECF 61). Rather, the prior restraint is so broad that the SEC did not even argue it bears a close relationship to the settled action. The panel's conclusion that Mr. Musk was free to negotiate or litigate the underlying action—but not challenge the constitutionality of the SEC's condition of settlement—cannot be reconciled with Supreme Court precedent on unconstitutional conditions, which seeks to prevent the government from obtaining via agreement what it could not otherwise legally obtain.

Indeed, the decision undermines the unconstitutional conditions doctrine, meriting *en banc* review. The SEC has taken the position that the Constitution does not circumscribe what it may demand of settling defendants. The Court's failure to

address this question leaves the SEC free to demand broad waivers of constitutional rights—seemingly without limit—so long as the defendant is desperate enough to settle. This Court should grant rehearing *en banc* to ensure that it carries out its role in protecting constitutional rights from government interference. Resolution of this question will provide meaningful guidance to district courts in this Circuit and the 98 percent of defendants who settle enforcement actions with the SEC, who may lack the resources to challenge the SEC's practice of mandating constitutionally suspect concessions in settlements.

## FACTUAL STATEMENT

1.      In 2018, Mr. Musk and the SEC entered into a consent decree to resolve charges brought by the SEC alleging Mr. Musk violated Exchange Act Section 10(b) by posting certain statements on Twitter regarding a potential transaction to take Tesla private. A50. The court entered a judgment in accordance with the terms of the consent decree, restraining Mr. Musk from violating Section 10(b), requiring Mr. Musk to pay a $20 million fine, and requiring Mr. Musk to resign from his role as Chairman of the Board of Directors of Tesla. A51, A53. The judgment also required that Mr. Musk obtain pre-approval for written communications that contain or reasonably could contain, information material to the Company or its shareholders. A53-54.

2.      In February 2019, the SEC sought to hold Mr. Musk in contempt of

court for a tweet it believed violated the pre-approval provision. A75. Faced with the possibility of being held in contempt of court for publishing a tweet, Mr. Musk agreed to amendments to the initial consent decree, which replaced the materiality standard of the pre-approval provision with wide-ranging categories of information. A231-32. The district court entered an amended judgment, the terms of which subject Mr. Musk to the possibility of being held in contempt of court even for publishing truthful, non-material information about Tesla. *Id*.

3. Following entry of the amended judgment, the SEC has continued to inquire whether Mr. Musk's tweets have been submitted for pre-approval. A57-58, A253-54; SA33. In November 2021, the SEC launched an investigation into Mr. Musk's compliance with the consent decree and amended judgment. CA24-25. Mr. Musk moved to quash the subpoena issued to him and for relief from the amended judgment on the basis that the pre-approval provision is an unconstitutional prior restraint that the SEC has abused to police Mr. Musk's First Amendment speech. A243; *see also* SA36-39; A255.

4. The district court denied Mr. Musk's motion. In addressing whether the amended judgment should be vacated or modified, the district court concluded that Mr. Musk had knowingly and willingly entered into the consent decree and that he had not demonstrated changed circumstances justifying relief from judgment. A278-79. The district court, relying on *Romeril*, determined that it did not need to

address the constitutionality of the pre-approval provision because Mr. Musk had waived his First Amendment rights in agreeing to the terms of the settlement. A274-75 & n.5. As a result, the district court did not address Mr. Musk's arguments regarding the enforceability of the pre-approval provision.

5. Mr. Musk appealed the district court's denial of his motion to modify the amended judgment. A284. On May 15, 2023, a panel of this court (Livingston, C.J., Kahn, J., Raggi, J.) issued a summary order affirming the district court. The panel decision rejected Mr. Musk's request for relief based on changed circumstances, reasoning that Mr. Musk should have anticipated the SEC's requests for information on his compliance with the consent decree and amended judgment. Op. 5. Relying on a provision of the consent decree inapplicable to the pre-approval provision, the panel erroneously held that Mr. Musk agreed to "provide such evidence" of compliance with the provision. Op. 4. As to Mr. Musk's argument that the pre-approval provision in the amended judgment infringes Mr. Musk's First Amendment rights, the panel concluded that, because Mr. Musk had agreed to the consent decree, he could not object to it "merely because he has now changed his mind." Op. 6. The panel declined to address Mr. Musk's argument that the pre-approval provision—as an unconstitutional prior restraint extracted as a condition of settlement with the SEC—cannot be enforced, indicating in a footnote that Mr. Musk had forfeited the argument by failing to raise it in the district court. Op. 6 n.3.

## ARGUMENT

### I.   THE PANEL OVERLOOKED THAT MR. MUSK DID NOT FORFEIT HIS UNENFORCEABILITY ARGUMENT

The panel should grant rehearing to address Mr. Musk's arguments that the pre-approval provision in the amended judgment cannot be enforced. The panel neglected to rule on this issue only by overlooking Mr. Musk's arguments regarding enforceability in the district court and the continuing chilling effect the unconstitutional prior restraint has on Mr. Musk's speech. Fed. R. App. P. 40(a)(2).

Specifically, the panel overlooked that, as set forth in Mr. Musk's reply brief on appeal (at 20-21), Mr. Musk raised the unenforceability of the prior restraint embodied in the consent decree and amended judgment before the district court. As a result, the panel incorrectly concluded that Mr. Musk had forfeited this argument.

The district court briefing demonstrates that Mr. Musk preserved this issue. In his opening brief in the district court, Mr. Musk argued that "[e]nforcement of the decree in the present circumstances also poses a grave threat to Mr. Musk's First Amendment rights," SA36, and argued that the court should pay special attention "when a party seeks modification of a . . . consent decree that arguably relates to vindication of a constitutional right," *id.* (quoting *Rufo v. Inmates of the Suffolk Cnty. Jail*, 502 U.S. 367, 383 n.7 (1992)). Mr. Musk likewise contended before the district court that, under *United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005), "[a]ny imposition of a prior restraint . . . bears 'a heavy presumption against its

constitutional validity.'" SA22. And Mr. Musk expressly requested that "the Court should modify the consent decree to remove the prior restraint on Mr. Musk's speech," which was "patently unconstitutional." SA38.

In his reply brief, and in response to the SEC's argument that Mr. Musk had waived his First Amendment rights, Mr. Musk explained why any waiver was unenforceable. Specifically, Mr. Musk cited to *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir. 1963), in response to the SEC's reliance on *Romeril*. SA47, SA54. Mr. Musk argued that "*Crosby v. Bradstreet Co.*, 312 F.2d 483, in which *the Second Circuit vacated a consent decree on First Amendment grounds*, remains the controlling law in this Circuit." SA54 (emphasis added). Mr. Musk then quoted *Crosby* to point out specifically that a court may not enforce a prior restraint even if the parties consented to it because "*that the parties may have agreed to it is immaterial.*" *Id.* (emphasis in original). And Mr. Musk cited Mr. Romeril's then-pending petition for *certiorari* for the authority in it explaining that "courts lack power to enforce prior restraints and content and viewpoint-based speech restrictions as settlement conditions, even when entered with consent." *Id.*

In so arguing, Mr. Musk placed before the district court whether the "waiver of his First Amendment rights is unenforceable." Op. 6, n.3. The panel overlooked these arguments and therefore should address Mr. Musk's argument that the pre-approval provision cannot be enforced.

Beyond the specific arguments that Mr. Musk raised, the panel's rejection of Mr. Musk's unenforceability argument overlooks both the continuing nature of the consent decree and the purely legal nature of the question before the Court.  A court approving a consent decree always "retains the authority, and the responsibility, to make further amendments to [an] existing order or any modified decree it may enter as warranted by the exercise of its sound discretion." *Brown v. Plata*, 563 U.S. 493, 542 (2011); *see also* 47 Am. Jur. 2d Judgments § 653 ("[A] judgment allegedly void on constitutional grounds is subject to attack at any time.")).  Courts regularly entertain constitutional challenges to consent decrees years after the decrees were signed. *See, e.g.*, *Frew v. Hawkins*, 540 U.S. 431, 435 (2004) (considering merits of challenge to enforceability of consent decree signed two years prior to challenge); *Overbey v. Mayor of Balt.*, 930 F.3d 215, 222 (4th Cir. 2019) (declaring consent decree "unenforceable and void" based on First Amendment grounds), *reversing* 2017 WL 5885657 at *1 (D. Md. Nov. 29, 2017) (noting action filed three years after signing of consent decree); *United States v. Witco Corp.*, 76 F. Supp. 2d 519, 521, 531 (D. Del. 1999) (resolving defendant's constitutional challenge to consent decree eight years after entry).

Further, when presented with a legal question like the enforceability of the pre-approval provision, this Court is "more likely to exercise [its] discretion" to address it even if raised for the first time on appeal. *Baker v. Dorfman*, 239 F.3d

415, 420 (2d Cir. 2000); *see, e.g.*, *Ware v. L-3 Vertex Aerospace, LLC*, 833 F. App'x

357, 359 (2d Cir. 2020) (exercising this discretion); *Booking v. Gen. Star Mgmt. Co.*,

254 F.3d 414, 419 (2d Cir. 2001) (same). And review is particularly warranted here

because the result of the panel's decision delaying resolution of this question means

that the pre-approval provision continues to cast an unconstitutional chill over

Mr. Musk's speech whenever he considers making public communications. *See*

*Citizens United v. Schneiderman*, 882 F.3d 374, 381 (2d Cir. 2018) (where

government action prevents "engaging in further speech," "[s]uch chilling of

expression is repugnant to the First Amendment").

The enforceability of the consent decree is a ripe and important issue that the

panel should decide on its merits.[1]

---

[1] Rehearing also would allow the panel to correct certain errors in its opinion.
*First*, the decision incorrectly states that the consent decree envisioned that
Mr. Musk would have to provide evidence of his compliance with the pre-approval
provision. Op. 4. But the consent decree's provision concerning compliance
pertains only to "undertaking (a)"—the requirement that Mr. Musk resign from his
role as Chairman of the Board of Directors of Tesla. A44-45 (emphasis added).
*Second*, the decision states that "the SEC has opened just three inquiries into Musk's
tweets since 2018" (Op. 4), when in fact the inquiries have spawned numerous
subsequent subpoenas about Mr. Musk's compliance with the pre-approval
provision. And, *third*, the decision erroneously assumes the truth of the SEC's
allegations underling these inquiries (Op. 4-5), but the SEC's investigation is still
pending, and these are disputed questions. Indeed, the district court made a similar
error, which it corrected. *See* A282.

## II. REHEARING OR REHEARING *EN BANC* IS WARRANTED TO ADDRESS MR. MUSK'S ARGUMENT THAT THE PRE-APPROVAL PROVISION IS AN UNCONSTITUTIONAL CONDITION

Independently, rehearing is warranted because the panel decision conflicts with Supreme Court precedent on the unconstitutional conditions doctrine, which requires consideration of whether the SEC could condition settlement of the underlying action on Mr. Musk's waiver of his First Amendment rights as to unrelated, future statements. Fed. R. App. P. 35(b).

### A. The Panel Decision Cannot Be Reconciled With Supreme Court Precedent On Unconstitutional Conditions

Although the panel stated it would not address Mr. Musk's challenge to the enforceability of the pre-approval provision (Op. 6 n.3), it indicated that Mr. Musk simply could have "*chose[n]*" not to sign the consent decree and "negotiate[d] a different agreement," (Op. 6 (emphasis in original)). This statement contradicts well-established law governing the unconstitutional conditions doctrine.

The Supreme Court has long addressed—and invalidated—unconstitutional conditions attached to a government benefit even when the complaining party agreed to accept the benefit in exchange for the condition. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (holding that unconstitutional conditions doctrine applies "regardless of the public employee's contractual or other claim to a job"); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 539 (2001) (acceptance of funds no bar to challenge); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 721 (1996)

(addressing challenge by independent contractor that accepted employment offer);

*F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 364 (1984) (analyzing

challenge of public broadcasting stations that accepted and disbursed federal funds);

*Alliance for Open Society*, 570 U.S. 206 (considering challenge by domestic

organization received funding under the challenged act).  Even when ultimately

holding a condition constitutional, the Supreme Court has engaged in complete

analysis under the doctrine, regardless of whether the challenger had accepted the

government benefit.  *See, e.g.*, *Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S.

47, 59 (2006) (law schools received federal funding).[2]

The Supreme Court in *Alliance for Open Society*, in which the Court held that

a funding condition ran afoul of the First Amendment even though the challenger

---

[2] As numerous cases have held, a settlement with a government entity is a benefit.  *See, e.g.*, *Moreas*, 2022 WL 15774011, at *4 (collecting cases); *see also Overbey*, 930 F.3d at 219, 222 (invalidating waiver of First Amendment rights demanded by the city even though "Overbey agreed to settle her suit"); *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1392 (9th Cir. 1991) (applying the nexus test even though Mr. Davies "executed an agreement" waiving his rights); *Lil' Man In The Boat, Inc. v. City & Cnty. of S. F.*, 2017 WL 3129913 at *9–10 (N.D. Cal. July 24, 2017) (applying unconstitutional conditions argument to waiver as a part of a contract to use government property); *Stephens v. Cnty. of Albemarle*, 2005 WL 3533428, at *6 (W.D. Va. Dec. 22, 2005) (unconstitutional conditions doctrine must apply to settlement agreements because to hold otherwise "would vitiate the unconstitutional conditions doctrine"); *La. Pac. Corp. v. Beazer Materials & Servs.*, 842 F. Supp. 1243, 1254 (E.D. Cal. 1994) ("[T]he doctrine of unconstitutional conditions operates in a settlement context as a limitation upon the government's power to exact a waiver of constitutional rights.").

had received the funds, addressed the precise flaw that infects the panel's decision here. While, "[a]s a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds," "[p]ursuant to this 'unconstitutional conditions' doctrine, as it has come to be known, the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance." *All. for Open Soc'y Int'l*, 570 U.S. at 214. Instead, a court must analyze the condition to determine whether it bears a close nexus to the benefit received. *All. for Open Soc'y Int'l*, 570 U.S. at 214-15 ("[T]he relevant distinction that has emerged from our cases is between conditions that define the limits of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself.").[3] The panel's refusal to conduct this inquiry thus contravenes the long line of Supreme Court cases on unconstitutional conditions.

---

[3] The pre-approval provision here does not meet this test. Unlike in the traditional plea bargaining context—or in *Romeril*—the government here required Mr. Musk to waive rights not connected to the charged conduct. Just as a court may not require a criminal defendant to waive the right to a jury trial on potential future charges other than those giving rise to the plea, the government may not require that Mr. Musk waive his right to speak freely on topics unconnected to the original statements at issue.

Indeed, two members of the panel here previously recognized as much. The Supreme Court in *Alliance for Open Society* reviewed this Court's decision. *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218 (2d Cir. 2011), *cert. granted*, 568 U.S. 1113 (Jan. 11, 2013) (No. 12-10). Prior to the Supreme Court's review, this Court denied the petition for rehearing *en banc*. 678 F.3d 127 (2d Cir. 2011). But Chief Judge Livingston and Judge Raggi joined a dissent from the denial of rehearing *en banc* that criticized the panel for *not* analyzing the case under the unconstitutional conditions doctrine, 678 F.3d at 130 (Cabranes, J., dissenting from denial of rehearing *en banc*, joined by Raggi, J., and Livingston, J.), even though the plaintiffs had accepted the funding and even complied with the condition "to avoid losing [the] funding," 651 F.3d at 228.

This Court should grant rehearing *en banc* to avoid repeating this error.

**B.    Whether The SEC May Extract Constitutionally Infirm Concessions In Settlements Is A Question Of Exceptional Importance**

The Court should grant rehearing *en banc* for the independent reason that whether the SEC may demand constitutionally suspect concessions as part of settlements is one of exceptional importance.

*First*, the unconstitutional conditions doctrine serves as an important safeguard on constitutional rights. Without it, the government could effectively "deny a benefit to a person because of his constitutionally protected speech or

associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' Such interference with constitutional rights is impermissible." *Perry*, 408 U.S. at 597 (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

*Second*, the SEC routinely settles the actions it brings—by its own estimate, it settles 98 percent of enforcement actions. *Moraes*, 2022 WL 15774011, at *2 (citing Luis A. Aguilar, Commissioner, U.S. Sec. & Exch. Comm'n., *Remarks Before the 20th Annual Securities and Regulatory Enforcement Seminar* (Oct. 25, 2013) ("The SEC currently settles approximately 98% of its Enforcement cases.")). But the SEC has told this Court that the Constitution does not constrain the demands it may place on settling defendants. SEC Br. at 50-51. Instead, the SEC has taken the position that the unconstitutional conditions doctrine does not apply to its settlements at all. *Id.* Yet this Court has refused to address the application of the unconstitutional conditions doctrine to SEC settlements, declining to address the issue in *Romeril*, even though the issue was presented in the briefing, and then declining to address it again here. *SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021); Appellant's Br. at 39-41, *Romeril*, 15 F.4th 166 (No. 19-4197), 2020 WL 1934329 at *39-41; Op. 6 n.3. Because the SEC settles so many cases but has taken the position that not even the Constitution limits the concessions it may demand from

defendants, the Court's failure to address this question is an abdication of the Court's duty to safeguard the constitutional rights of settling defendants. This Court should not "turn a blind eye to First Amendment rights being used as a bargaining chip." *Moraes*, 2022 WL 15774011, at *1.

Rehearing *en banc* is warranted to correct this troubling problem.

## **CONCLUSION**

This Court should grant rehearing or rehearing *en banc*.

DATED: June 29, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By /s/ Alex Spiro
_____

William A. Burck
Rachel G. Frank
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000

Alex Spiro
Ellyde R. Thompson
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

*Counsel for Elon Musk*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of Fed. R. App. P. 40(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,869 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word 2013 in a proportionally spaced typeface in size 14 Times New Roman font.

DATED: June 29, 2023

*/s/ Alex Spiro*
Alex Spiro

**Summary Order**

22-1291
*SEC v. Musk*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15ᵗʰ day of May, two thousand twenty-three.

Present:     DEBRA ANN LIVINGSTON,
                        *Chief Judge*,
                  REENA RAGGI,
                  MARIA ARAÚJO KAHN,
                        *Circuit Judges.*

_____

SECURITIES AND EXCHANGE COMMISSION,

                  *Plaintiff-Appellee*,

          v.                                                          22-1291

ELON MUSK,

                  *Defendant-Appellant*.

_____

For Appellee:                          JEFFREY A. BERGER, Senior Appellate Counsel (Michael A. Conley, Solicitor, John R. Rady, Appellate Counsel, *on the brief*), *for* Dan Berkovitz, General Counsel, Securities and Exchange Commission, Washington, DC.

For Defendant-Appellant:          ELLYDE R. THOMPSON, Quinn Emanuel Urquhart & Sullivan LLP, New York, NY and Washington, DC (Alex Spiro, William A. Burck, Rachel G. Frank, *on the brief*).

1

Appeal from an April 27, 2022, opinion and order of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Elon Musk ("Musk") appeals from an April 27, 2022, opinion and order of the United States District Court for the Southern District of New York. Musk argues that the district court abused its discretion in denying his motion to modify or terminate a consent decree he entered into with the Securities and Exchange Commission ("SEC"). Musk argues that the consent decree warrants modification both because of changed circumstances and because the decree contains a "prior restraint" that violates the First Amendment; he further contends that he did not validly waive his First Amendment rights in the consent decree and that even if he had, the waiver is unenforceable. He therefore argues that a pre-approval provision should be struck from the consent decree or, alternatively, that the decree should be modified or terminated.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.     Rule 60(b)(5)

We review a district court's decision on a Rule 60(b) motion for abuse of discretion, granting relief only in "exceptional circumstances." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994) (internal quotation marks omitted); *see also Sec'y of Hous. & Urban Dev.*, 239 F.3d 211, 216 (2d Cir. 2001).

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances," operating as "an exception to finality." *Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005). As relevant here, the rule provides that "the court may

relieve a party or its legal representative from a final judgment" where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). To determine whether a modification or termination is equitable, the movant must first show "either a significant change . . . in factual conditions or in law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992).[1] Significant changes in factual conditions may warrant equitable relief where (1) "changed factual conditions make compliance with the decree substantially more onerous"; (2) "a decree proves to be unworkable because of unforeseen obstacles"; or (3) "enforcement of the decree without modification would be detrimental to the public interest." *Id.* "Once a moving party has met its burden of establishing either a change in law or in fact warranting modification of a consent decree," the district court must then "determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391.

Musk argues that the SEC's methods of enforcing the consent decree constitute changed circumstances that have made compliance with it substantially more onerous. We disagree. "Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 386. The consent decree Musk entered into with the SEC expressly required his compliance with "procedures implemented by Tesla" regarding corporate communications, including those "made in any format, including, but not limited to, posts on social media (e.g., Twitter)." App'x 44–45. The Tesla communications policy in turn required that covered communications would be subject to a pre-approval process

---

[1] The "flexible standard" adopted by the Supreme Court in *Rufo* made less stringent the test imposed by *United States v. Swift & Co.*, which required "a clear showing of grievous wrong evoked by new and unforeseen conditions." 286 U.S. 106, 119 (1932). Because the parties both apply the *Rufo* standard, we assume without deciding that it applies here, arguably outside its traditional context of institutional reform litigation.

such that certain senior executives, including Musk, would not be "authorized to post or publish" without first consulting with Tesla's General Counsel or an in-house securities lawyer. *Id.* at 55. Initially, only tweets "that contain, or reasonably could contain, information material to [Tesla] or its shareholders" were covered. *Id.* at 45. Later, the parties amended the agreement to replace the materiality standard with a list of specified subjects. *See id.* at 231–32. The consent decree also required certification of compliance in the form of written reports and provided that the SEC "may make reasonable requests for . . . evidence of compliance." *Id.* at 45. Musk agreed to "provide such evidence." *Id.* The SEC subpoenas that gave rise to this litigation therefore "actually were anticipated" by Musk. *Rufo*, 502 U.S. at 386.

We see no evidence to support Musk's contention that the SEC has used the consent decree to conduct bad-faith, harassing investigations of his protected speech. To the contrary, the record indicates that the SEC has opened just three inquiries into Musk's tweets since 2018. The first resulted in the consent decree that is the subject of this appeal. *See* App'x 16–17, 31 (tweet in which Musk claimed that he was "considering taking Tesla private at $420" with "[f]unding secured," although Musk had allegedly "not even discussed, much less confirmed, key deal terms, including price, with any potential funding source"); *see also* 15 U.S.C. § 78j, 17 C.F.R. § 240.10b-5 (making it unlawful to "make any untrue statement of a material fact . . . in connection with the purchase or sale of any security"). Two subsequent investigations sought information regarding tweets published in 2019 and 2021. *See* App'x 57–58 (seeking documents regarding tweet that misstated Tesla's annual production of vehicles; *id.* at 232, Confidential App'x 24–25 (seeking documents regarding Twitter poll in which Musk proposed selling 10% of his Tesla stock, an "event[] regarding [Tesla's] securities (including Musk's acquisition or disposition of the Company's securities)"); *see also id.* at 27–28 (describing legal justifications for investigating the

4

transactions).   Each tweet plausibly violated the terms of the consent decree.   *See Kozlowski v. Coughlin*, 871 F.2d 241, 245 (2d Cir. 1989) (explaining that it is "the parties' consent [that] animates the legal force of a consent decree" (internal quotation marks and citation omitted)). Accordingly, the SEC made a "reasonable request" for information in order to investigate Musk's compliance with the decree, as provided for in the parties' agreement.   Whether or not the consent decree may have "provide[d] broader relief than the court could have awarded after a trial" does not detract from the SEC's ability to enforce the agreement Musk voluntarily signed, the terms of which plainly "[came] within the general scope of the case made by the pleadings" and "further[ed] the objectives of the law upon which the complaint was based."   *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986).   And even if we agreed that any factual conditions had changed outside the contemplation of the parties—which we do not—the SEC's limited, appropriate inquiries in this case have not made compliance with the consent decree "substantially more onerous" than could have been reasonably anticipated when Musk agreed to the consent decree's terms.   *Rufo*, 502 U.S. at 384.   "The exercise of equity . . . does not permit a court to indulge a party's discontent over the effects of its bargain."   *Kozlowski*, 871 F.2d at 246.

Nor does the public interest require modification of the consent decree.   If anything, it cuts in the other direction, given the importance of the public's interest in the enforcement of federal securities laws and because "[o]ur Court recognizes a 'strong federal policy favoring the approval and enforcement of consent decrees.'"   *SEC v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 293 (2d Cir. 2014) (quoting *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)).   We conclude

therefore that the district court was well within its sound discretion to deny Musk's motion to modify the terms of the consent decree.[2]

## II.    Waiver

Musk's argument that the consent decree is effectively a "prior restraint" on his speech does not change this conclusion.    Parties entering into consent decrees may voluntarily waive their First Amendment and other rights.    *See SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021). Indeed, every consent decree by definition involves waiver of the right to trial, which saves the parties "the time, expense, and inevitable risk of litigation."    *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).    Had Musk wished to preserve his right to tweet without even limited internal oversight concerning certain Tesla-related topics, he had "the right to litigate and defend against the [SEC's] charges" or to negotiate a different agreement—but he *chose* not to do so. *Romeril*, 15 F.4th at 172.    Having made that choice, he may not use Rule 60 to collaterally re-open a final judgment merely because he has now changed his mind.[3]    We express no view as to the substance of his underlying First Amendment claims.

*        *        *

---

[2] It follows that the district court also acted within its discretion to deny Musk's motion to terminate the decree altogether, an argument Musk appears to have abandoned on appeal.    Musk in any event makes no showing that the objective of the consent decree "has been achieved," nor that a "durable remedy has been implemented" such that "continued enforcement of the order is not only unnecessary, but improper."    *Horne v. Flores*, 557 U.S. 433, 450 (2009); *see also United States v. Eastman Kodak Co.*, 63 F.3d 95, 101 (2d Cir. 1995) (requiring that a movant show that the "basic purposes of the consent decrees . . . have been achieved").

[3] Musk also argues that any waiver of his First Amendment rights is unenforceable. Having not made that argument before the district court, Musk has forfeited it.    *See United States v. Jones*, 565 U.S. 400, 413 (2012).

We have considered Defendant-Appellant's remaining arguments and find them to be without merit.    Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk